A09A1545. KOLLIE v. THE STATE.
A09A1564. BRANDT v. THE STATE.
(687 SE2d 869)

SMITH, Presiding Judge.

William Kollie and Ryan Brandt were jointly tried by a jury and found guilty on 24 counts of a 29-count indictment for crimes that occurred on October 22, 2005 and November 4, 2005. Following the denial of their respective motions for new trial, Kollie and Brandt appeal, citing several claims of error. We have consolidated their separate appeals for purposes of judicial economy. Having reviewed their claims of error, we affirm in part and reverse in part in Case No. A09A1545. And we vacate the judgment and remand in Brandt's case, Case No. A09A1564, for the trial court to conduct a new hearing on the motion to suppress in light of the United States Supreme Court's ruling in *Arizona v. Gant*, ___ U. S. ___ (129 SC 1710, 173 LE2d 485) (2009).[1]

Construed in favor of the verdict, the evidence presented at trial showed the following:

### The Home Invasion

On October 22, 2005, Kollie and Brandt knocked on the door of a home and asked the husband some "strange questions" concerning

---

[4] We also reject the Pointers' argument that Roberts failed to preserve his claim of error.

[1] Although we vacate and remand Brandt's case for a new hearing on his motion to suppress, we nevertheless address his other claims of error. See *Simmons v. State*, 299 Ga. App. 21 (681 SE2d 712) (2009).

YALE LAW LIBRARY

who was present in the home. The husband had noticed that the two parked a black pickup truck unusually close to his home. When the husband turned to close the door, Kollie attempted to force his way into the home while pointing a gun at the husband's chest. The husband tried to move the gun away to close the door, but as he tried, Kollie shot the husband in the arm. The bullet shattered the bone in the husband's arm. Brandt, wearing a red bandana over his face, and Kollie then entered the home, put a gun to the wife's head and repeatedly threatened to kill her and her husband. As they entered, the wife told her six-year-old daughter to hide. "[A]t some point within the first few moments," Kollie took the child from her room and dragged her back to the front of the home while holding a gun to her head. Kollie and Brandt called each other by the code names "January" and "February."

Kollie and Brandt bound each member of the family with duct tape, covered their eyes with the tape, and left them lying in the foyer. The two then began ransacking the entire home and gathering items, including money, guns, jewelry, computers, and a safe. Kollie and Brandt also took the husband's and wife's wallets and credit cards, and asked them for the credit card personal identification numbers. They also threatened that if the family called the police, they would "be back to molest and kill your daughter in front of you."

Kollie and Brandt loaded their truck and the husband could hear them "going in and out of the garage . . . taking bags and bags of things." Either Kollie or Brandt drove away in the black pickup truck and the other in the family's vehicle that was parked in the garage.

### The Fuddruckers Robbery

On November 4, 2005, at about 1:00 a.m., a delivery driver drove his tractor-trailer to a Fuddruckers restaurant on Scenic Highway in Snellville to make a delivery there. As he walked out of the restaurant's cooler, he was approached by two men who ordered him at gunpoint to "get down." Both men wore bandanas over their faces. One of the men wore a "hockey goalie" shirt. One of them had short hair while the other "had dreadlocks." The one with dreadlocks tied the victim's hands and feet with duct tape, and asked him where the restaurant's office was located before leaving him in the cooler. After a few minutes, the men returned and took the victim to the restaurant's office where they discovered a "book that had night deposits." After a few more minutes, the two asked the victim if he had any bank cards. When the victim responded that he did not, one of the men took some keys out of the victim's back pocket that

opened other Fuddruckers restaurants and asked the victim how to operate the alarm system. The two men then took the victim outside to the parking lot and locked him in the back of his trailer where he was discovered the next morning.

### The Applebee's Robbery

Also on November 4, 2005, around 1:30 a.m., two off-duty employees of an Applebee's restaurant on Scenic Highway in Snellville sat outside the restaurant in their vehicles waiting for the vehicles to warm up. The two employees, a bus boy and a cook, noticed a black pickup truck circling the parking lot. The cook attempted to call the manager who was still inside the restaurant to warn her. Before he could make the call, Kollie and Brandt got out of a black pickup truck carrying guns and wearing bandanas over their faces, walked up to the employees, ordered them out of their vehicles, and commanded them to "get down on the ground." Kollie and Brandt then dragged the two victims to a dumpster in the back of the restaurant and ordered the busboy to call the manager to open the door.

When the manager opened the door, Kollie and Brandt threw the busboy and the cook to the floor and then dragged them to the bar. They ordered the victims to remove their clothing and then tied up their hands and feet with gray tape. The two took the busboy's money and debit card. The cook testified that he had left the keys inside his vehicle and that Kollie and Brandt took the vehicle when they left the restaurant.

The restaurant manager and a line cook were inside the restaurant when Kollie and Brandt entered. When the manager opened the door for the busboy and the cook, she was also pushed to the floor. Minutes later Brandt forced the manager at gunpoint to the restaurant's office to open the safe. When the manager opened the safe, Brandt took out deposit bags containing money and took the manager back out to the front of the restaurant, ordered her to remove her clothing, and tied her up with a computer cord.

While the line cook was cleaning in the kitchen, Kollie walked up to him, put a gun to his head, and dragged him from the kitchen to the front of the restaurant where the busboy, cook, and manager were being held. The line cook was also tied up with duct tape after being ordered to remove his clothing. Kollie and Brandt took the line cook's wallet and ATM card and asked for his personal indentification number. The line cook testified that Kollie and Brandt called each other by the names "January" and "February."

In the early morning hours of November 4, 2005, officers received a dispatch call that an armed robbery had occurred at an

Applebee's restaurant. Minutes later, officers observed a black pickup truck speeding and executed a stop of the vehicle. As the officers began checking Kollie's and Brandt's driver's licenses, they received a dispatch call advising that the two robbery suspects were black males driving a black Ford Harley-Davidson Edition pickup truck. The dispatch also gave a description of the suspects: one wearing a white shirt and black jeans and the other a light-colored shirt with a red bandana over his head. The officers noticed that Kollie and Brandt fit the description given.

The officers testified that they then conducted a "felony stop" with guns drawn and secured the two men in the back of separate police vehicles. The officers saw inside the pickup truck in plain view several liquor bottles with pour spouts attached, two handguns, and some deposit bags. Following a search of the truck, officers found a shotgun, two handguns, and some keys to Fuddruckers restaurants. It was determined that two of the weapons found belonged to the husband in the home invasion robbery.[2]

1. Both Kollie and Brandt challenge the sufficiency of the evidence. On appeal from a criminal conviction we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Kollie and Brandt were each charged with six counts of kidnapping. They argue that the evidence was insufficient to sustain those convictions in light of the Georgia Supreme Court's decision in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), decided after their trial and sentencing.[3] We therefore examine each of the kidnapping convictions in turn in light of the holding in *Garza*.

Former OCGA § 16-5-40 (a) provided that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." The Georgia Supreme Court in *Garza*, supra, adopted the test set forth in *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 16 V.I. 614 (3d Cir. 1979), to determine the sufficiency of evidence of

---

[2] Several other items that belonged to the family were discovered in the truck following an inventory search.

[3] We note that the legislature's amendment to the kidnapping statute, OCGA § 16-5-40, applies to crimes committed on or after July 1, 2009. *Horne v. State*, 298 Ga. App. 601, 603, n. 1 (680 SE2d 616) (2009).

asportation in kidnapping cases. Id. at 701-702. This test

> assesses four factors in determining whether the movement at issue constitutes asportation: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Citation omitted.) Id. at 702. The test assists

> in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id.

(a) *The home invasion child victim (Count 6).* The evidence showed that when Kollie and Brandt entered the home, the six-year-old child victim ran to her room to hide. Kollie went to her room, seized her, and brought her back to the foyer dragging her with a gun to her head.

While the movement of the child was relatively short and occurred during the commission of the armed robbery and burglary, it was not an inherent part of those separate offenses. And the movement presented a significant danger to the victim independent of the danger posed by the armed robbery and burglary, as the victim was assaulted with the gun and present when Kollie and Brandt threatened to "molest and kill" her if the family called police. The movement also placed the victim in additional danger by enhancing Kollie and Brandt's control over her. See *Brower v. State*, 298 Ga. App. 699, 707 (2) (680 SE2d 859) (2009) (movement from area near front door to room at rear of building gave defendant more control over victims). Under these circumstances, we hold that the movement of the child victim constitutes sufficient asportation to support a kidnapping charge. See *Horne v. State*, 298 Ga. App. 601, 604 (1) (680 SE2d 616) (2009) (movement of victim from closet to dining room created additional danger for victim by placing her in open space such that defendant could abuse her more easily).

(b) *Applebee's busboy and cook (Counts 19 and 20).* The evidence showed that Kollie and Brandt, brandishing guns, approached the

two victims and ordered them to get out of their vehicle and onto the ground. The two victims were then dragged to a dumpster near the back of the restaurant where they were ordered to gain access to the restaurant.

Here, the movement was short in duration, but arguably occurred prior to the armed robbery. See *Abernathy v. State*, 299 Ga. App. 897, 901 (1) (685 SE2d 734) (2009) (movement of victim from yard to carport was beginning of aggravated assault). The movement was an inherent part of the crimes as the victims were used to gain access to the restaurant. But the movement from their vehicle to the back of the restaurant near a dumpster enhanced Kollie and Brandt's control over the victims and isolated them from protection or rescue. *Brower*, supra, 298 Ga. App. at 707 (2). Therefore, there was sufficient evidence of asportation to sustain the kidnapping convictions on these counts.

(c) *Applebee's manager and line cook (Counts 21 and 22).* The evidence showed that the Applebee's manager and line cook were inside the restaurant when Kollie and Brandt entered. The line cook was dragged at gunpoint from the kitchen to the front of the restaurant, and the manager was forced at gunpoint from the front of the restaurant to an office in the back where she was ordered to open the safe. After taking money from the safe, Kollie and Brandt forced the manager back to the front of the restaurant.

The movements of the manager and the line cook back and forth through the restaurant were short in duration, occurred during and incidental to the armed robbery and burglary, and did not present a significant danger to the victims independent of the danger posed by those crimes. Similar movement was addressed in *Garza* as an example of movement constituting a "criminologically insignificant circumstance":

> Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnapping, even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong.

(Citation and footnote omitted.) *Garza*, supra, 284 Ga. at 699 (1). Because the movement of the two victims here did not constitute asportation, we must reverse Kollie's and Brandt's convictions on those counts. See id.; *Crawford v. State*, 297 Ga. App. 187, 190 (1) (b) (676 SE2d 843) (2009) (conviction reversed where brief movement during and incidental to robbery did not enhance risk to victim);

*Grimes v. State*, 297 Ga. App. 720, 722 (678 SE2d 167) (2009) (same).

(d) *Fuddruckers delivery driver (Count 27)*. The evidence showed that the tractor-trailer delivery driver was approached by Kollie and Brandt as he stepped out of the restaurant freezer and ordered to "get down." They then tied the victim's ankles and hands with duct tape and took him to the restaurant's office. After a few minutes, Kollie and Brandt took the victim outside and put him in the back of his trailer, shut the door, and locked it.

The first movement of the victim, from the freezer to the office, was not sufficient evidence of asportation. See *Grimes*, supra. The second movement of the victim, however, from the office to the back of the trailer that was parked outside, was short in duration, but occurred after Kollie and Brandt took items from the restaurant and the keys from the victim, and was not an inherent part of the armed robbery and burglary. The movement also served to isolate the victim from rescue. Under the facts here, the element of asportation was established and the evidence was sufficient to sustain Kollie's and Brandt's convictions for kidnapping on this count of the indictment. See *Dixon v. State*, 300 Ga. App. 183, 184 (1) (684 SE2d 679) (2009) (sufficient evidence of asportation where after completion of robbery victim was dragged outside and isolated from co-workers and other potential witnesses).

3. Kollie and Brandt argue that the evidence was insufficient to sustain their convictions for armed robbery against the Applebee's manager as alleged in Count 15 (and therefore insufficient to sustain their conviction for possession of a firearm during the commission of the felony of armed robbery as alleged in Count 25). But Count 15 was merged with Count 14, another armed robbery count, for sentencing purposes. "We need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

4. Kollie and Brandt contend that the evidence was insufficient to sustain their conviction for hijacking a motor vehicle as alleged in Count 11 because there was no evidence that the family's vehicle was taken from their presence. They argue that because the family members were bound with their eyes covered inside the home, their vehicle, which was parked in the garage, could not have been taken from their immediate presence.

OCGA § 16-5-44.1 (b) provides that "[a] person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so." And although this Code section

requires only presence and not immediate presence, "[w]e have construed similar language in the armed robbery statute, OCGA § 16-8-41 (a). In that context, 'immediate presence' has been held to extend 'fairly far,' and robbery convictions are upheld even out of the physical presence of the victim." (Citation, punctuation and footnote omitted.) *Johnson v. State*, 246 Ga. App. 109, 112 (3) (539 SE2d 605) (2000). Moreover,

> when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense . . . can still be committed. Further, the concept of immediate presence is broadly construed if the object taken was under the victim's control or responsibility and the victim is not too distant.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 734 (1) (394 SE2d 639) (1990).

Here, the evidence showed that the family's vehicle was parked in the attached garage and the husband heard Kollie and Brandt going in and out of the garage and one tell the other to take the husband's vehicle. The husband testified, "one left in the truck they drove and one left in the — in my vehicle." The family members were bound and lying in the foyer of their home when the vehicle was taken. Therefore, the husband was not too distant from the vehicle, and the jury could have concluded that Kollie and Brandt took the keys to the vehicle which were under the husband's control, or that the vehicle was under the husband's control simply because it was located in the attached garage. This evidence was sufficient to show a taking from the husband's presence to sustain their convictions for hijacking a motor vehicle as alleged in Count 11. See *Morgan*, supra (victim fled the scene after being threatened with knife and property was taken while victim was driving away); *Jennings v. State*, 292 Ga. App. 149, 151-152 (1) (a) (664 SE2d 248) (2008) (taking from immediate presence where items were taken from living room while victims were forced to remain in bedroom); *Meyers v. State*, 249 Ga. App. 248, 249 (547 SE2d 781) (2001) (taking from immediate presence where items taken from bedroom and victim held in living room at gunpoint); *Heard v. State*, 204 Ga. App. 757, 758 (1) (420 SE2d 639) (1992) (taking from immediate presence where victim was forced to flee into woods before defendant took victim's car and items within car); *Waters v. State*, 161 Ga. App. 555, 556 (289 SE2d 21) (1982) (evidence sufficient to show taking from immediate presence where defendant took items from car parked on road while victim lay in gully and was close enough to car to hear defendant talking).

5. Kollie and Brandt argue that the evidence was insufficient to

sustain their conviction for theft by taking as alleged in Count 24. They argue that because the vehicle in which the Applebee's cook was sitting when accosted was owned by a third person who did not testify, there was no evidence that the vehicle was taken without the owner's permission. OCGA § 16-8-2 provides:

> A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.

And we have held that "while it is necessary for the State to prove that the stolen property belonged to someone other than the defendant in order to support a theft by taking conviction, the identity of the owner is not a material element of the crime that must be alleged and proved." (Citation omitted.) *Brandeburg v. State*, 292 Ga. App. 191, 193 (1) (663 SE2d 844) (2008). The evidence presented here was sufficient to show that the vehicle belonged to someone other than Kollie and Brandt. See id.

6. We have reviewed the evidence with regard to the remaining counts and find it sufficient for a rational trier of fact to find Kollie and Brandt guilty as either a participant or party to the crimes of armed robbery (Counts 3-5, 14, 16-18 and 26), false imprisonment (Counts 7 and 8), burglary (Counts 12, 23 and 28), and possession of a firearm during the commission of a felony (Counts 13, 25 and 29).[4]

7. Kollie and Brandt contend that the trial court should have merged the armed robbery counts charged in connection with the home invasion. They argue that the offenses should have merged because the same items were taken from each member of the family.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). "Robbery is a crime against possession, and is not affected by concepts of ownership." (Citation and punctuation omitted.) *McCluskey v. State*, 211 Ga. App. 205, 206 (1) (438 SE2d 679) (1993). If more than one victim is robbed, a defendant may be charged with the robbery of each victim. *Green v. State*, 265 Ga. App. 126, 128-129 (2) (592 SE2d 901) (2004). Here, Kollie and Brandt committed armed robbery against each member of the family by taking property from the presence of each of them,

---

[4] Counts 1 and 2 of the indictment were severed by the trial court. Count 9 was merged with Count 10, and Count 15 was merged with Count 14 for purposes of sentencing. The trial court granted a directed verdict on Count 17.

with the intent to commit theft, by the use of a handgun. The convictions on these counts therefore did not merge. See *Phanamixay v. State*, 260 Ga. App. 177, 180 (3) (581 SE2d 286) (2003).

8. Kollie contends that the trial court erred in denying his request to replace his trial counsel. Kollie testified that his second appointed trial counsel did not have his "best interest at heart," screamed at him and insulted him, lied to him, failed to relay to him a threat made against his family by Brandt, and used "false methods of persuasion in an attempt to get [him] to accept the State's plea offer." Following a hearing on the matter in which counsel denied the allegations, the trial court gave Kollie the option of either hiring counsel of his choosing, representing himself, or proceeding with appointed counsel. Kollie took the option of proceeding to trial with his appointed counsel, and the trial court denied his motion to replace counsel.

We evaluate the trial court's decision on whether to replace counsel under an abuse of discretion standard. *McCoy v. State*, 285 Ga. App. 246, 250 (5) (645 SE2d 728) (2007). "The Sixth Amendment guarantees effective assistance of counsel, not preferred counsel or counsel with whom a meaningful relationship can be established." (Citation, punctuation and footnote omitted.) Id. Because Kollie has not shown that appointed counsel could not provide him effective representation, the trial court did not abuse its discretion in denying his motion to replace counsel three months before the start of trial. See *Middlebrooks v. State*, 255 Ga. App. 541, 544 (6) (566 SE2d 350) (2002) (where appointed counsel used racially derogatory term, court did not abuse its discretion in denying motion to discharge counsel because no showing counsel could not provide effective representation).

9. Kollie contends that the trial court erred in sentencing him for possession of a firearm by a convicted felon because he was not charged with that crime. Count 29 of the indictment charged Kollie with possession of a firearm during the commission of a felony, and the jury found Kollie guilty of that offense. The original sentencing sheet states in error that Kollie was found guilty of possession of a firearm by a convicted felon. The trial court acknowledged the error during the hearing on the motion for new trial, and the sentence was amended to reflect that Kollie was sentenced for possession of a firearm during the commission of a felony. This enumeration is without merit.

10. Kollie argues that his aggregate sentence of seven consecutive life sentences plus 265 years constitutes cruel and unusual punishment.

> A presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence

does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.

(Citations and punctuation omitted.) *Howard v. State*, 262 Ga. App. 214, 216 (2) (585 SE2d 115) (2003). The sentence for each offense here is within statutory guidelines. And "the trial court had the discretion to impose consecutive sentences for the separate offenses." (Citation omitted.) Id. Because Kollie has not made a showing that the punishment was so severe as to "shock the conscience," the presumption stands that his sentence does not constitute cruel and unusual punishment. See *Reviere v. State*, 231 Ga. App. 329, 332-333 (4) (498 SE2d 332) (1998) (sentence of five consecutive life sentences within statutory limits not cruel and unusual).

11. Brandt contends that the trial court erred in failing to sever the home invasion robberies from the two restaurant robberies.[5] Specifically, Brandt argues that the trial court failed to determine whether the trier of fact would be able to fairly and intelligently judge each offense.

As explained in *Stewart v. State*, 277 Ga. 138 (587 SE2d 602) (2003), our courts have adopted the ABA Standards on Joinder of Offenses which provide:

(a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), should grant a severance of offenses whenever: (i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or (ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court should consider whether in view of the number of offenses charged and the complexity of the evidence to be

---

[5] We note that the trial court did sever two counts involving a robbery of the same Applebee's that occurred on August 21, 2005.

offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Under these Standards, a trial court must first determine whether the offenses are joined solely because they are of the same or similar character. If they are, severance is mandatory. If they are not, the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense.

(Citations and punctuation omitted.) Id. at 138-139. Whether to sever offenses is within the discretion of the trial court. Id. at 139.

[I]n the exercise of that discretion [the court] must balance the interest of the defendant with the interest of the State. In so doing, a trial court must look to the number and complexity of the offenses charged and determine whether a trier of fact can parse the evidence and apply the law with regard to each charge.

(Citations omitted.) Id.

Here, the trial court determined that the offenses were not joined solely because they were of a same or similar character. The court found that the robberies involved a common scheme and ongoing criminal enterprise. See *Miller v. State*, 270 Ga. 741, 744 (3) (512 SE2d 272) (1999) (court found common scheme in burglaries 30 months apart). Further, although the record does not contain the court's specific finding with regard to whether the jury could "parse the evidence" with regard to each charge, having reviewed the record, we cannot say that the evidence was so complex that the jury was unable to assess Brandt's guilt or innocence as to each charge. See *Stewart v. State*, 268 Ga. App. 243, 246 (601 SE2d 755) (2004).

12. Brandt argues that the trial court erroneously shifted the burden of proof in its charge to the jury on the crime of burglary. The trial court instructed the jury:

You may infer an intent to steal where the evidence shows an unlawful entry into the building where goods or valuables are present or stored or kept inside, and where there is no other apparent motive for the entry. Whether or not you make any such inference is a matter solely within your discretion.

Brandt contends that in instructing the jury that it could infer intent, "the court obliterated the[ ] 'separate and distinct[ ]' line between unlawful entry and intent to steal."

This argument has been decided adversely to Brandt in *Johnson v. State,* 277 Ga. 82 (586 SE2d 306) (2003), in which the Georgia Supreme Court approved the language of the court's instruction given here, holding that it did not constitute an unconstitutional shifting of the burden of proof to the defendant. Id. at 84-85 (3).

13. Brandt argues that the trial court erred in not excusing a juror who admitted sleeping during trial. The juror acknowledged that he had fallen asleep. When questioned, the juror stated that he fell asleep for about 30 seconds but not while anyone was talking. He stated further that there was no reason he could not stay awake other than the fact that the chairs were comfortable, and assured the court that it would not happen again. The trial court denied Brandt's motion to remove this juror.

Under OCGA § 15-12-172, the trial court has "discretion to discharge a juror and replace him or her with an alternate at any time so long as the trial court has a sound legal basis." (Citations and punctuation omitted.) *Freeman v. State*, 291 Ga. App. 651, 654 (3) (662 SE2d 750) (2008). We cannot say that the trial court abused its discretion here in refusing to discharge and replace a juror who fell asleep for only a few seconds between direct and cross-examination of a witness and assured the court it would not happen again. Compare id. (court did not err in excusing sleeping juror who stated he averaged three hours of sleep per night and could fall asleep while driving).

14. (a) Brandt contends that his convictions for the armed robbery of the husband in the home invasion and the aggravated battery of the husband should have merged. He contends that the same facts used to prove the aggravated battery were also used to prove the armed robbery.

The indictment charged Brandt with the offense of aggravated battery for shooting the husband in the arm, rendering it useless. The evidence showed that as the husband attempted to shut the door, Kollie shot him in the arm. Kollie and Brandt then entered the home and robbed the family at gunpoint. Because the aggravated battery charge was based upon firing the gun and shooting the husband in the arm and the armed robbery charge was based upon the use of the gun to rob, the offenses do not merge as a matter of fact. See *Silvers v. State*, 278 Ga. 45, 48 (4) (597 SE2d 373) (2004). Moreover, because the aggravated battery was completed prior to the armed robbery, the two offenses did not merge. See *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009).

(b) Brandt argues further that the trial court erred in failing to merge his convictions for the aggravated battery against the husband and the burglary of the family's home. The indictment charged Brandt with the offense of burglary for entering the home with the

intent to commit an armed robbery. As explained in Division 14 (a) above, the aggravated battery of the husband was complete before Kollie and Brandt entered the home. The offenses therefore did not merge. See *Henderson*, supra.

15. Brandt challenges the trial court's denial of his motion to suppress the evidence found in the truck he and Kollie were driving when arrested. He contends that because he and Kollie were secured in the back of separate police vehicles, there was no safety concern to justify a search of the truck. He argues that therefore the search was in violation of the Fourth Amendment as held in the United States Supreme Court's recent decision of *Arizona v. Gant*, supra, decided after the trial court's ruling on Brandt's motion to suppress and after he filed his notice of appeal.

Because the scope of the search here falls within the scope of the Supreme Court's decision in *Gant*, we vacate the trial court's order denying Brandt's motion to suppress and remand this case to the trial court to conduct a hearing and consider the holding in *Gant*. The party adversely affected by the court's ruling may then appeal from that ruling within 30 days after its entry. *Agnew v. State*, supra, 298 Ga. App. 290, 292-293 (3) (680 SE2d 141) (2009); *Simmons v. State*, 299 Ga. App. 21 (681 SE2d 712) (2009).

*Judgment affirmed in part and reversed in part in Case No. A09A1545. Judgment vacated and case remanded with direction in Case No. A09A1564. Bernes, J., concurs. Phipps, J., concurs, and concurs in the judgment only as to Division 4.*

DECIDED NOVEMBER 19, 2009 —
RECONSIDERATION DENIED DECEMBER 10, 2009 —

*Glynn R. Stepp*, for appellant (case no. A09A1545).
*Mark A. Yurachek*, for appellant (case no. A09A1564).
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney*, for appellee.