S10A0866. HEARD v. THE STATE.
(697 SE2d 811)

CARLEY, Presiding Justice.

A jury found Ricky Heard guilty of two counts of felony murder, two counts of armed robbery, three counts of aggravated assault, two counts of theft by receiving stolen property, criminal use of an article with an altered identification mark, possession of a firearm during the commission of a crime, and hijacking a motor vehicle. Treating one of the felony murder counts as surplusage, the trial court sentenced Heard to life imprisonment for the other felony murder count and for one of the armed robbery counts, a consecutive 20-year term for hijacking, ten-year terms each for two of the aggravated assault counts and for the two counts of theft by receiving, and five-year terms for the weapons offense and criminal use of an article. The remaining counts were merged by the trial court. Heard appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that, on May 22, 2005, Heard and three other young men entered a tennis center where Stephanie Bishop was working. The young men left the building at Ms. Bishop's request, but then Heard and another member of the group returned. They threw Ms. Bishop to the ground, punched her, and threatened to shoot her. The assailants took money, Ms. Bishop's car keys, and other items, and then fled from the scene in her car. Approximately three weeks later, on June 13, 2005, Heard obtained a stolen handgun and was using a stolen vehicle. He and some of the same accomplices approached Alberto Ramirez and Juan Navarro at an apartment complex. Heard brandished a gun and demanded money. He and his accomplices took Ramirez's wallet, but it was empty, and they started to leave. Ramirez got a bat from his apartment and ran after Heard, who then shot and killed Ramirez. The stolen gun, with the serial number partially scratched off, was found in the stolen vehicle.

---

[*] The crimes occurred on May 22 and June 13, 2005. Heard was originally indicted on December 16, 2005 and tried on an indictment which was filed on July 6, 2007. The jury found Heard guilty on November 7, 2007, and the trial court entered the judgments of conviction and sentences on January 16, 2008. The motion for new trial was prematurely filed on November 13, 2007, amended on September 30, 2008, and denied on June 10, 2009. Heard filed the notice of appeal on June 22, 2009. The case was docketed in this Court for the April 2010 term and orally argued on June 8, 2010.

Heard specifically contends that the trial court erred in failing to direct a verdict of acquittal as to the count of hijacking Ms. Bishop's motor vehicle. The offense of hijacking a motor vehicle is committed when a "person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so." OCGA § 16-5-44.1 (b). Heard argues that the State presented no evidence that the vehicle was taken from the person or presence of Ms. Bishop, as she testified that, after her car keys were taken, she locked herself in a closet some 200 yards away from her car's location in a parking lot. However, "[t]he statute does not require that the person be in the motor vehicle." *Stephens v. State*, 245 Ga. App. 823, 825 (2) (538 SE2d 882) (2000). Even the more restrictive language in the armed robbery statute, " 'immediate presence[,]' " has been held to extend "fairly far," and robbery convictions are upheld even out of the physical presence of the victim.' [Cit.]" *Johnson v. State*, 246 Ga. App. 109, 112 (3) (539 SE2d 605) (2000). " 'Further, the concept of immediate presence is broadly construed if the object taken was under the victim's control or responsibility and the victim is not too distant.' [Cit.]" *Kollie v. State*, 301 Ga. App. 534, 541 (4) (687 SE2d 869) (2009). Although Ms. Bishop's vehicle was not immediately outside the building and therefore perhaps not in her "immediate" presence, it was at the tennis center in a parking lot. "[T]he jury could have concluded that [Heard] took the keys to the vehicle which were under [Ms. Bishop's] control . . . ." *Kollie v. State*, supra. The evidence shows that her

> car keys, which are integral to the car's operation, were taken directly from [her] person upon threat of injury. Given these circumstances, the jury was authorized to find that [Heard] took the [vehicle] from [Ms. Bishop's] "person or presence" for purposes of the offense of hijacking a motor vehicle.

*Johnson v. State*, supra (where victim was in store and his car was parked just outside). See also *Kollie v. State*, supra (where victim was in his home and the vehicle was in the attached garage).

Heard further argues that the evidence is not sufficient to show that he possessed a firearm or weapon. "[T]he weapon requirement of the hijacking statute is similar to that of the armed robbery statute." *Haugland v. State*, 253 Ga. App. 423, 427 (2) (560 SE2d 50) (2002). See also OCGA §§ 16-5-44.1 (a) (3), 16-8-41 (a). In either

case, the presence of a weapon

> "may be established by circumstantial evidence, and a conviction . . . may be sustained even though the weapon itself was neither seen nor accurately described by the victim. Some physical manifestation of a weapon is required, however, *or some evidence from which the presence of a weapon may be inferred.*" [Cit.] (Emphasis in original.)

*Prins v. State*, 246 Ga. App. 585, 586 (1) (539 SE2d 236) (2000), disapproved on other grounds, *Miller v. State*, 285 Ga. 285, 287, fn. 1 (676 SE2d 173) (2009). Here, the presence of a weapon could be inferred from evidence that Heard asked for a bag so that he could shoot the victim, that his accomplice handed him the bag, and that the victim then stopped resisting the attack. This evidence showed that Heard "acted as if he were holding an offensive object" and authorized "the jury [to] infer the presence of a gun." *Prins v. State*, supra at 587 (1) (distinguishing *Bradford v. State*, 223 Ga. App. 424 (477 SE2d 859) (1996)). See also 20 Ga. Jur. Criminal Law § 7:17 (the holding in *Bradford* "may well have been different if the defendant had told the victim he had a weapon or had not been stopped shortly thereafter and . . . found not to have a weapon. [Cit.]").

"We have reviewed the evidence and find that a rational trier of fact could find [Heard] guilty beyond a reasonable doubt of hijacking a motor vehicle." *Johnson v. State*, supra. Furthermore, viewed in a light most favorable to the verdicts, the evidence was sufficient to authorize a rational trier of fact to find Heard guilty beyond a reasonable doubt of all of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Edwards v. State*, 282 Ga. 259, 260 (1) (646 SE2d 663) (2007).

2. Heard contends that the trial court erroneously admitted his custodial statements, because the State failed to prove a knowing and voluntary waiver of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

> Even where, as here, a juvenile is involved, the question of whether there was a knowing and intelligent waiver of constitutional rights depends on the totality of the circumstances surrounding a police interrogation. [Cits.] "Among the factors to be considered are the accused's age and education; his knowledge of the charge and his constitutional rights; his ability to consult with family, friends, or an attorney; the length, method, and time of the interrogation; and whether he previously had refused to give a statement

or repudiated the statement later. [Cits.] On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the law to the facts. [Cits.]"

*Norris v. State*, 282 Ga. 430, 431 (2) (651 SE2d 40) (2007).

Construed in support of the trial court's ruling, the evidence shows that, at the time of his statements, Heard was 15 years old and between the eighth and ninth grades. He received average grades and was literate. His mother gave police detectives permission to interview Heard outside of her presence as part of their investigation into the shooting of Ramirez. "The fact that [Heard's] mother was not present was a factor for the trial court to consider, but it was not determinative on the issue of voluntariness. [Cit.]" *Allen v. State*, 283 Ga. 304, 306 (2) (a) (658 SE2d 580) (2008). Neither Heard nor his mother ever asked that she be present.

Before Heard was asked about the shooting, a detective read the juvenile advisement of rights to him, and he expressed his understanding and executed a waiver thereof. Heard was informed that he did not have to talk to the police without a parent present. The detectives did not have probable cause to charge Heard at the time but, after he admitted some involvement in the shooting and his mother was informed, she requested an attorney and Heard was not questioned further. The interrogation lasted about an hour and a half and was followed by a brief admission by Heard that he was the one who shot the gun. Heard had not previously refused to give a statement, and he did not subsequently repudiate his statements.

At one point during the interview, one of the detectives confirmed Heard's belief in God and knowledge of the Ten Commandments, called murder a mortal sin to be answered for, and implied the need to confess while he has the chance. Heard argues that these statements constituted coercive interrogation tactics which induced his confession by "the slightest hope of benefit or remotest fear of injury" in violation of OCGA § 24-3-50. However, "[t]he fact that a confession has been made under a spiritual exhortation . . . or a promise of collateral benefit shall not exclude it." OCGA § 24-3-51. See also *State v. Woods*, 280 Ga. 758 (632 SE2d 654) (2006); *Stafford v. State*, 55 Ga. 591, 592 (3) (1876). In other jurisdictions as well, "religious remarks [are] viewed as only one part of the totality of the circumstances and [are] held not to be coercive. [Cits.]" *Rodgers v. Commonwealth*, 318 SE2d 298, 304 (Va. 1984). See also *State v. Johnson*, 207 SW3d 24, 45 (III) (E) (3) (Mo. 2006).

"Given the totality of the circumstances, we find no abuse of discretion in the refusal to exclude [Heard's] statement[s]. [Cit.]" *Allen v. State*, supra. See also *Green v. State*, 282 Ga. 672, 674 (2) (653

SE2d 23) (2007).

3. Heard urges that trial counsel rendered ineffective assistance by failing to call Heard's mother at the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) to prove that a detective refused her requests to be with her son. In order to prevail on this claim under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Allen v. State*, supra at 307 (4). " ' "On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. (Cit.)" [Cit.]' [Cit.]" *Reid v. State*, 286 Ga. 484, 486 (3) (690 SE2d 177) (2010).

One of the attorneys representing Heard testified that his mother could not specifically remember whether she had requested to be present during Heard's interview. In light of the questionable probative value of her testimony and the admission of certain other evidence on the issue which was favorable to the defense, Heard has not rebutted the strong presumption that trial counsel's decision was made in the exercise of reasonable professional judgment. See *Allen v. State*, supra at 307-308 (4); *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999). " '(T)he determination of which witnesses to call . . . is a strategic and tactical decision within the exclusive province of the attorney after consultation with the client. (Cit.)' [Cit.]" *Reid v. State*, supra at 486 (3) (a).

Moreover, as already noted, the absence of Heard's mother from his interview is not determinative of the admissibility of his statements. *Allen v. State*, supra at 306 (2) (a). Accordingly, Heard has not shown a reasonable probability that testimony by his mother at the *Jackson-Denno* hearing would have so changed the trial court's analysis of the totality of circumstances as to result in the suppression of Heard's statements. Nor has he shown a reasonable probability that such suppression would have altered the outcome of the trial in the face of the overwhelming evidence presented by the prosecution. See *Bridges v. State*, 286 Ga. 535, 540 (5) (690 SE2d 136) (2010); *Allen v. State*, supra at 308 (4).

4. Heard also enumerates as error the denial of a motion to sever the offenses committed on May 22, 2005 from those occurring on June 13, 2005.

> If the charges are joined solely because they are of the same or similar character, a defendant has an absolute right to sever. [Cits.] . . . [However,] offenses have not been joined *solely* because they are of the same or similar character when evidence of one offense can be admitted upon the trial

of another, i.e., when they are so strikingly similar as to evidence a common motive, plan, scheme or bent of mind. [Cits.] (Emphasis in original.)

*Stewart v. State*, 277 Ga. 138, 139-140 (587 SE2d 602) (2003). In this case, evidence of crimes committed on one date would be admissible in the trial of those perpetrated on the other date. All of the crimes for which Heard was charged include some of the same accomplices "committing armed robberies with similar characteristics over a short period of time." *Simmons v. State*, 282 Ga. 183, 185 (4) (646 SE2d 55) (2007). On each date, Heard was the primary aggressor, a gun was used or its use was feigned, the victims were randomly chosen and caught off guard, money was the object, Heard had three accomplices, and all of them fled afterwards.

> The fact that evidence of one offense would be admissible in a trial of another offense is a relevant consideration in determining whether to sever, [cit.], but it does not end the inquiry. A trial court must still determine if severance of the offenses would promote a fair [and intelligent] determination of guilt or innocence as to each offense. [Cit.]

*Stewart v. State*, supra at 140. "In so doing, a trial court must look to the number and complexity of the offenses charged and determine whether a trier of fact can parse the evidence and apply the law with regard to each charge. [Cit.]" *Stewart v. State*, supra at 139. There is no evidence in this case that the combined trial of the charges confused or misled the jury, "and the verdict itself, including [Heard's] acquittal for some of the charges, shows that the jury fully understood the law and evidence." *Simmons v. State*, supra at 186 (4). "Therefore, on the facts of this case, it cannot be said that the trial court abused its discretion in denying the motion for severance. [Cit.]" *Simmons v. State*, supra at 185 (4).

5. A witness for the State was permitted to testify, over a hearsay objection, that Tafarion Childs, who was one of Heard's co-indictees, stated that Heard had admitted his involvement in the shooting of Ramirez. The trial court allowed the testimony under the co-conspirator exception to the hearsay rule. Heard contends that there was no evidence that Childs was a party to the conspiracy to commit robbery at the apartment complex.

> "Under OCGA § 24-3-5, the State must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirator, in order to admit his out-of-court declarations. (Cit.) . . ." [Cit.] Conduct which

discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy. [Cit.]

*Livingston v. State*, 271 Ga. 714, 719 (3) (524 SE2d 222) (1999). Evidence in this case showed that Childs gave Heard the murder weapon, drove the stolen vehicle in which it was found, helped to conceal the crime, and had also been one of Heard's accomplices at the tennis center. Thus, there was sufficient evidence to establish that Childs was part of the conspiracy to commit robbery on June 13, 2005. See *Livingston v. State*, supra.

Heard further complains that the trial court prevented him from examining a witness about overhearing statements by two other co-conspirators that they planned to blame the shooting on Heard because he was a minor. However, at the close of that witness' testimony, the trial court reversed itself and gave Heard the opportunity to question the witness about the co-conspirators' statements. Although Heard declined to avail himself of that opportunity, he could have done so and, therefore, "any error in this regard is harmless, [cit.] . . ." *Guyton v. State*, 281 Ga. 789, 793 (9) (642 SE2d 67) (2007).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 12, 2010.

*H. Maddox Kilgore*, for appellant.

*Patrick H. Head, District Attorney, Jesse D. Evans, John R. Edwards, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Assistant Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General,* for appellee.