**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 4, 2016**

# In the Court of Appeals of Georgia

A16A0569. WHALEY v. THE STATE.

BARNES, Presiding Judge.

A Richmond County jury found Meguel Demarcus Whaley guilty of hijacking a motor vehicle, possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, fleeing and attempting to elude a law enforcement officer, reckless driving, violation of a Class C learner's permit, and obstruction of a law enforcement officer. Whaley filed a motion for new trial, which the trial court denied. On appeal, Whaley contends that there was insufficient evidence to convict him of hijacking a motor vehicle, possession of marijuana with intent to distribute, and reckless driving. For the reasons discussed below, we affirm Whaley's convictions for hijacking a motor vehicle and possession of marijuana with intent to distribute, but reverse his reckless driving conviction.

"On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict." *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

We neither weigh the evidence nor judge witness credibility, but only determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld." *McLeod v. State*, 245 Ga. App. 668, 669 (1) (538 SE2d 759) (2000).

So viewed, the evidence shows that around 10:30 p.m. on July 5, 2010, the victim received a call from his friend Chris asking if the victim wanted to hang out. The victim did not know Chris very well,[1] but agreed to pick him up at a gas station. After meeting up with Chris, the victim drove them around until Chris asked to stop at someone's house for a few minutes. The victim drove Chris to the house, and Chris went inside while the victim remained in his car. After Chris returned to the car, they continued to ride around until Chris received a call on his cell phone. The victim pulled his car into another gas station and let Chris out of the car so that he could talk on the phone privately. After talking on his phone, Chris got back into the car and

---

[1] The victim did not know Chris' last name or where he lived.

2

asked the victim to drive to a nearby elementary school so that they could meet up with two men whom Chris identified as his cousin and his friend.

After Chris directed the victim to the elementary school, the victim drove into a lot on the side of the school to wait for Chris' cousin and friend to approach the car. Once the victim had driven into the lot, however, Chris asked the victim to turn off his car and walk with him behind the school to meet up with his cousin and friend there. Although he "felt kind of suspicious" at that point, the victim agreed to walk with Chris behind the school. Upon walking behind the school, the victim saw two men, later identified as Whaley and his co-defendant Todderius McNorrill, sitting on some steps. Chris approached Whaley and McNorrill, gave them a high-five, and spoke with them privately for a few minutes while the victim stood nearby.

The victim thought they were going to walk back to his car, but Whaley suddenly approached the victim and pointed a handgun at him. Whaley said, "You know what time it is," which the victim understood to mean that he was being robbed. Whaley held the gun to the victim's head as he went through the victim's pockets with his other hand. Chris began protesting, but Whaley told McNorrill to "shut him up," and McNorrill pulled out a handgun and pointed it at Chris. The victim later told

3

the police that one of the guns was a .22 caliber weapon and the other was a .380 caliber black and silver weapon.

Whaley told the victim to lie down on the ground and asked McNorrill for a roll of duct tape. After the victim lay on the ground, Whaley got the duct tape from McNorrill and wrapped it around the victim's eyes, mouth, and hands. Whaley placed his gun against the victim's head and again went through the victim's pockets, taking $125 in cash, a cell phone, the victim's keys, and his driver's license. Whaley warned the victim that he and McNorrill had the victim's identification and would kill the victim if he called the police. Before running from the scene, Whaley and McNorrill kicked the victim in the legs, ribs, and head.

The victim was able to free himself from the duct tape in time to see Whaley and McNorrill get inside his car and drive away from the school.[2] The victim then walked to a gas station a few minutes away and used the phone to call the police. A sheriff's deputy arrived at the gas station shortly thereafter, and the victim told the deputy about what had happened, described the two suspects, and provided a description of his stolen car. The deputy radioed the information to his dispatcher, and other deputies in the area were told to be on the lookout for the victim's car.

---

[2] Chris apparently ran off separately, but the record is unclear on this point.

A few minutes later, another deputy saw the victim's car stopped at a red light at an intersection, confirmed that it matched the description of the stolen vehicle, and attempted to initiate a traffic stop. When the deputy activated the emergency lights on his marked patrol car, the driver of the victim's car ignored the lights and drove away, resulting in a police chase.

A deputy in a second marked patrol car activated his emergency lights and took over the chase. As the chase continued, Whaley jumped out of the driver's side door while the victim's car was still moving and ran towards the woods. McNorrill remained in the front passenger seat after Whaley jumped out, and the victim's car crashed through a fence and came to a stop against a tree. Deputies pursued Whaley on foot and gave several verbal commands for him to stop, but he continued running from them. One of the deputies caught up with Whaley and was able to apprehend him. The deputy discovered that Whaley had a learner's permit that required him to have a licensed driver over 21 years of age riding with him in the passenger seat. McNorrill was under 21.

Another deputy approached the crashed car and arrested McNorrill, who was still in the passenger seat. The deputy searched McNorrill and discovered twelve .22 caliber bullets in his pocket. The victim subsequently was driven to the scene where

5

the car chase had concluded, and he confirmed that Whaley and McNorrill were the perpetrators in a show-up identification.

Deputies searched the victim's car that had been taken by Whaley and McNorrill. Marijuana weighing a total of 4.5 grams was in plain view on the passenger seat and on the driver's side floorboard. From the way the marijuana was packaged, it appeared to be for distribution. The victim later testified at trial that the marijuana did not belong to him. Additionally, deputies found a loaded Hi-Point .380 caliber handgun on the driver's seat, and the victim testified that it was the gun that Whaley had pointed at him.

Deputies also searched behind the elementary school, where they found an empty roll of duct tape and a baseball cap that belonged to the victim. However, the victim's cell phone, cash, and other personal items were never found.

Whaley and McNorrill were jointly charged with hijacking a motor vehicle, armed robbery, false imprisonment, possession of marijuana with intent to distribute, and two counts of possession of a firearm during the commission of a crime. Whaley also was charged with fleeing and attempting to elude a law enforcement officer, reckless driving, violation of a Class C learner's permit, and obstruction of a law enforcement officer. Whaley and McNorrill subsequently were tried together. The

6

victim and responding deputies testified to the events as summarized above, and the State introduced and showed to the jury a video recording of the police car chase and photographs of the items seized at the elementary school and from the victim's car. Whaley and McNorrill elected not to testify and did not present any defense witnesses.

After reviewing all the evidence, the jury found both Whaley and McNorrill guilty of hijacking a motor vehicle, possession of marijuana with intent to distribute, and one count of possession of a firearm during the commission of a crime. The jury also found Whaley guilty of fleeing and attempting to elude a law enforcement officer, reckless driving, violation of a Class C learner's permit, and obstruction of a law enforcement officer. The jury acquitted Whaley and McNorrill of armed robbery, false imprisonment, and one count of possession of a firearm during the commission of a crime. Whaley filed a motion for new trial, which the trial court denied, resulting in this appeal in which Whaley challenges the sufficiency of the evidence on several counts.[3]

1. Whaley first contends that there was insufficient evidence to support his conviction for hijacking a motor vehicle. Specifically, Whaley maintains that the

_____

[3]McNorrill is not a party to this appeal.

State failed to prove that the victim's car was taken from the person or presence of the victim, given that Whaley took the car keys from the victim while behind the elementary school, but then fled and retrieved the car from the school parking lot. We are unpersuaded because Whaley's argument is predicated on too narrow of a reading of the hijacking-a-motor-vehicle statute.

"A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle *from the person or presence of another* by force and violence or intimidation or attempts or conspires to do so." (Emphasis supplied.) OCGA § 16-5-44.1 (b).[4] By its plain language, OCGA § 16-5-44.1 (b) requires only presence, not immediate presence, but even the more restrictive term "immediate presence" used in the armed robbery statute

> has been held to extend "fairly far," and robbery convictions are upheld even out of the physical presence of the victim. Further, the concept of immediate presence is broadly construed if the object taken was under the victim's control or responsibility and the victim is not too distant.

---

[4] OCGA § 16-5-44.1 has been amended twice since the time of the offense committed in this case, but not subsection (b), the provision at issue here. See Ga. L. 2014, p. 432, § 2-4; Ga. Laws 2015, p. 693, § 2-1.

8

(Citations and punctuation omitted.) *Heard v. State*, 287 Ga. 554, 555 (1) (697 SE2d 811) (2010).

Here, the evidence showed that Whaley took the car keys directly from the person of the victim upon threat of violent injury and then retrieved the victim's car that was parked in a lot on the side of the school where the attack had just occurred. Under these circumstances, the jury was authorized to find that Whaley took the car from the victim's "presence" for purposes of the offense of hijacking a motor vehicle. See *Heard*, 287 Ga. at 555 (1) (defendant entered business and took keys from victim, who then hid in closet while defendant retrieved car that was approximately 200 yards away in a parking lot); *Kollie v. State*, 301 Ga. App. 534, 541 (4) (687 SE2d 869) (2009) (physical precedent only) (defendants bound victim inside house and retrieved car from garage); *Johnson v. State*, 246 Ga. App. 109, 112 (3) (539 SE2d 605) (2000) (defendant took car keys from victim inside store and retrieved car that was parked outside).[5]

---

[5] We decline Whaley's request to overrule any of our prior case law construing the term "presence." We also note that our construction of the term "presence" is based on *Heard*, which is binding Supreme Court precedent.

9

2. Whaley also contends that there was insufficient evidence to support his conviction of possession of marijuana with intent to distribute. He argues that the State failed to prove beyond a reasonable doubt that he possessed the marijuana in the victim's car because the evidence did not exclude the reasonable alternative hypothesis that the marijuana belonged to the victim or McNorrill. We disagree because there was sufficient evidence that Whaley was in joint constructive possession of the marijuana with McNorrill.

> The law recognizes that possession can be actual or constructive, sole or joint. A person has actual possession of a thing if he knowingly has direct physical control of it at a given time. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. If one person alone has actual or constructive possession of a thing, possession is sole, but if two or more persons share actual or constructive possession of a thing, possession is joint.

(Citations and punctuation omitted.) *McNeal v. State*, 326 Ga. App. 429, 431 (1) (756 SE2d 660) (2014).

"A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity," and mere

10

presence at the scene of the crime is insufficient, without more, to show constructive possession. (Citations and punctuation omitted.) *Noble v. State*, 225 Ga. App. 470, 471 (484 SE2d 78) (1997). But "[c]ircumstantial evidence that multiple occupants of a car had equal access to hidden contraband may support the theory that all the occupants were guilty as parties to the crime and had joint constructive possession of the contraband." *Maddox v. State*, 322 Ga. App. 811, 815 (2) (746 SE2d 280) (2013).

Additionally, where a constructive possession case is based solely on circumstantial evidence,

> the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Whether this burden has been met is a question for the jury, and its determination will not be disturbed unless the verdict is insupportable as a matter of law.

(Citation and punctuation omitted.) *Noble*, 225 Ga. App. at 471.

Mindful of these principles, we conclude that the totality of this evidence was sufficient to establish beyond a reasonable doubt that Whaley was, at a minimum, in joint constructive possession of the drugs with McNorrill, and that every other reasonable hypothesis except the guilt of Whaley had been excluded. The evidence adduced a trial showed that Whaley was the driver of the victim's car shortly before

11

the marijuana packaged for distribution was found in plain view on the front passenger seat and the driver's side floorboard near a handgun linked to Whaley. And when the police attempted to stop the car and apprehend Whaley, he sped away in the car and then fled on foot. Furthermore, the victim denied that the marijuana belonged to him, and the evidence showed that Whaley and McNorrill had acted in concert with another throughout the night in question.

This combined evidence, construed in favor of the verdict, authorized a finding by the jury that Whaley constructively possessed the marijuana and was guilty of the charged offense. See *Prather v. State*, 293 Ga. App. 312, 314 (1) (667 SE2d 113) (2008) (jury could find that the defendant driver rather than the car owner possessed marijuana found in the car, where the owner testified that there were no drugs in the car when she allowed the defendant to borrow it); *Moody v. State*, 232 Ga. App. 499, 502-503 (1) (502 SE2d 323) (1998) (defendant's "attempts to avoid arrest and the presence of contraband in plain view" supported finding that the defendant "knew about the drugs and, at a minimum, jointly possessed the drugs"); *Doe v. State*, 189 Ga. App. 793, 794-795 (377 SE2d 546) (1989) (although defendant did not own truck where marijuana was found and had passengers with him during part of his trip, there was sufficient evidence to show that he possessed the drugs, given that he was driver

12

of the truck and the drugs were found in the open ashtray, on the seat, and under the seat within reach of the defendant).

3. Whaley further contends that there was insufficient evidence to convict him of the misdemeanor offense of reckless driving as alleged in the indictment. We agree.

"Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." OCGA § 40-6-390 (a). The indictment alleged that Whaley committed the offense of reckless driving "by running several red lights at a high rate of speed."

As the State concedes on appeal, the State failed to prove that Whaley committed reckless driving in the manner alleged in the indictment. More specifically, there was no evidence presented at trial that Whaley ran several red lights at a high rate of speed while driving the victim's car.

> While an unnecessary description of an unnecessary fact averred in an indictment need not be proved, in criminal law even an unnecessarily minute description of a necessary fact must be proved as charged. If the indictment sets out the offense as done in a particular way, the proof must show it so[.] No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid[.]

13

(Footnote omitted.) *Ford-Calhoun v. State*, 327 Ga. App. 835, 836 (1) (761 SE2d 388) (2014). See *Griffin v. State*, 294 Ga. 325, 328 (751 SE2d 773) (2013). Because the State admittedly did not prove the material allegation in the indictment that Whaley ran several red lights at a high rate of speed, we reverse his conviction for misdemeanor reckless driving.

*Judgment affirmed in part and reversed in part. Boggs and Rickman, JJ., concur*.