NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 5, 2024

S23A0927. McCULLUM v. THE STATE.

PINSON, Justice.

In November 2019, Appellant Samuel Earl McCullum was convicted of the 1998 rape and malice murder of Monica Blackwell and the 1999 rape of C.C.[1] McCullum contends on appeal that his convictions for the malice murder and rape of Blackwell, who died of

---

[1] Blackwell died on August 6, 1998, and C.C. was raped on May 9, 1999. On February 28, 2017, a DeKalb County grand jury indicted McCullum for malice murder (Count 1), felony murder predicated on rape (Count 2), felony murder predicated on aggravated assault with intent to rape (Count 3), and rape (Count 4), all in connection with Blackwell, and for another count of rape (Count 5), in connection with C.C. (Count 5 superseded a 2007 indictment that had also charged him with raping C.C.). At a trial from November 4 through 14, 2019, a jury found McCullum guilty on all counts. The trial court sentenced McCullum to life in prison for malice murder, plus two consecutive life sentences for the rape convictions; the felony murder counts were vacated by operation of law.

McCullum filed a timely motion for new trial on December 10, 2019, which was amended by new counsel on October 28, 2022, and again on December 14, 2022. Following a hearing on December 15, 2022, the trial court denied McCullum's motion for new trial, as amended, on January 3, 2023. McCullum filed a timely notice of appeal on January 25, 2023, and the case was docketed

cocaine intoxication and blunt-force trauma, were not supported by sufficient evidence.[2] As to malice murder, McCullum argues that the evidence was not sufficient because no evidence showed that he intoxicated Blackwell or otherwise connected him to the drugs she took. As to Blackwell's rape, he argues the evidence was not sufficient because the evidence did not exclude his hypothesis that he and Blackwell had a consensual sexual relationship. But the evidence, which we recount in detail below, was sufficient to authorize the jury to find that McCullum's actions caused Blackwell's death and to convict him of malice murder. The evidence was also constitutionally sufficient to convict McCullum of Blackwell's rape: evidence that Blackwell was found partially clothed and beaten by the side of the road with McCullum's sperm in her vagina authorized

---

to the August 2023 term of this Court and submitted for a decision on the briefs.

[2] To the extent McCullum challenges the sufficiency of the evidence supporting the counts for which he was found guilty but not convicted—the two counts of felony murder of Blackwell—those challenges are moot because the counts either merged or were vacated by operation of law. See, e.g., *Beamon v. State*, 314 Ga. 798, 800 (2) n.2 (879 SE2d 457) (2022).

the jury to reject his hypothesis that they had consensual sex. Finally, with respect to the conviction for the rape of C.C., McCullum contends that the trial court abused its discretion in denying his motion to dismiss that count on constitutional speedy trial grounds and in denying his motion to sever that count from the counts related to Blackwell's murder and rape, but we conclude that the trial court applied the correct standards and did not abuse its discretion by denying the speedy trial motion or the motion to sever.[3]

1. *The Evidence at Trial*

The evidence at trial, viewed in the light most favorable to the verdicts, showed the following.

(a) *Evidence of Blackwell's Rape and Murder*

Bonita Cox, Blackwell's cousin, last saw Blackwell in early August 1998. Blackwell was a recovering drug addict, had been in rehab, and, according to Cox, was "being a mother" to her son. On the

---

[3] McCullum does not challenge the sufficiency of the evidence for his conviction for the rape of C.C. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020) (holding that we no longer routinely review sua sponte the sufficiency of the evidence in non-death penalty cases).

last day Cox saw her, Blackwell was with a man whom Cox had never seen before. At trial, Cox identified McCullum in the courtroom as the man she saw Blackwell with that day. Blackwell introduced Cox to McCullum, said she would be back later, and left with him. After that, Cox never saw Blackwell alive again.

On August 6, 1998, a group of friends saw a body on the roadside and reported it to the police. This turned out to be Blackwell, who was partially clothed and "barely alive." Blackwell was transported to the hospital, where she died.

Dr. Gerald Gowitt, the medical examiner who performed Blackwell's autopsy, listed her cause of death as "acute cocaine intoxication." Dr. Gowitt testified that Blackwell had several abrasions on her face; a tooth knocked out, which was located in her esophagus; hemorrhages and bruises on the back of her head; and other similar blunt-force impacts to both sides of her head—all of which were consistent with someone hitting or beating her. Blackwell also had a "large amount" of benzoylecgonine, "a cocaine breakdown product," in her blood.

4

Dr. Gowitt explained that cocaine is a stimulant that raises the user's pulse and blood pressure, and "something you really don't want to have happen to you" while under the influence of cocaine is another event, such as a beating or rape, that raises the pulse and blood pressure even more. Dr. Gowitt believed Blackwell died because, while she was under the influence of cocaine, she experienced "a lot of trauma to the head," which would have raised her pulse and blood pressure. Dr. Gowitt was unable to determine from the autopsy if Blackwell had been raped but opined that, if she had been, that too would have contributed to her death in combination with the beating and cocaine. He concluded that Blackwell died because of "[t]he combination of acute cocaine intoxication superimposed on all of these head injuries."

During the autopsy, Dr. Gowitt also did a sexual assault work-up on Blackwell, consistent with the standard office policy at the time for "any female that is murdered." A GBI forensic scientist identified the presence of sperm on the vaginal smear collected during Blackwell's autopsy, developed a DNA profile from the sperm,

and added that DNA profile to the Combined DNA Index System (CODIS).

A GBI forensic serologist tested Blackwell's shorts but found no seminal fluid. In response to a hypothetical scenario posed by the State, the serologist agreed that the absence of seminal fluid on Blackwell's shorts was more consistent with her being raped and then dropped on the side of the road than it was with having consensual sex. If Blackwell had consensual sex, dressed, and walked around afterwards, gravity would have caused the seminal fluid to leave her body, and the fluid likely would have been found on her shorts.

In 2002, the DNA evidence collected during the investigation of Blackwell's rape and murder was matched to McCullum via CODIS.

(b) *Evidence of C.C.'s Rape*

On the evening of May 9, 1999, C.C. was walking along Lawrenceville Highway when a car approached her and the man driving offered her a ride, which she accepted. The man told C.C. he needed

6

to stop by his work, pulled into an auto repair shop, locked the gate, and then pulled his car into one of the bays and closed the bay door. C.C. was worried at this point but was unable to flee because there was a guard dog on the property that "seemed to be very vicious." The man raped C.C. in the back of the car. C.C. testified that the man was "very aggressive. So the more I fought him, the more aggressive he would become with me." The man then made C.C. exit the car and go into the bathroom, where he raped her again and tried to force her to give him oral sex; when she refused, he "hit" her and "knocked [her] to the ground," and then raped her again. Eventually, the man drove C.C. back to her apartment, letting her go after she promised she would not "tell on him" because she was "on the run" (she had come to Georgia because she was trying to avoid arrest for drug charges in Ohio).

C.C.'s friends convinced her to report the rape, and she did. But she gave the police a fake name because she did not want to be arrested for the pending charges in Ohio. C.C. submitted to a sexual assault examination, and her sexual assault kit was sent to the GBI,

7

where an analyst generated a DNA profile from sperm that was present on a vaginal swab collected during C.C.'s examination. That DNA was entered into CODIS. In 2002, the DNA evidence collected during C.C.'s sexual assault examination was matched to McCullum via CODIS.

At trial, C.C. identified McCullum in the courtroom as the man who gave her a ride and raped her in May 1999. Sherri Meeks, the owner and operator of the auto repair shop that employed McCullum at the time of C.C.'s assault, testified that McCullum sometimes did repairs overnight, alone, and that McCullum therefore had keys to the property, which was fenced. Meeks also confirmed that a German Shepherd guard dog who was not "friendly to strangers" stayed on the property at night to guard it.

(c) *Evidence of the CODIS Match and Other Assaults*

In 2007, investigators from Georgia traveled to North Carolina, where McCullum was incarcerated, to obtain a buccal swab from him to confirm the CODIS matches to the DNA collected from Blackwell's autopsy and C.C.'s sexual assault examination. The buccal

swab was tested and confirmed the match to the DNA collected in C.C.'s case in 2007;[4] the match to the DNA from Blackwell's case was confirmed in 2017.[5] McCullum's DNA was also matched to evidence collected during the investigation of the 1995 rape and murder of Theresa Blackwell (no relation to Monica Blackwell) in North Carolina, the 1998 rape and murder of Tamika Withers in Fulton County, Georgia, and the 2002 rape of a young woman, A.J., in Kentucky. At trial, the State introduced evidence of each of these assaults under OCGA § 24-4-413,[6] which showed the following.

As to the rape of A.J. in Kentucky, officers responded to a 911

---

[4] McCullum was indicted for C.C.'s rape in 2007, but that indictment was later superseded by the 2017 indictment that charged him with crimes against both Blackwell and C.C.

[5] Investigator Bill Presnell explained that when he submitted McCullum's buccal swab to the GBI in 2007, he thought the GBI would test the DNA against both cases. But when Blackwell's case was put on a trial calendar in 2017, he realized that the DNA had been confirmed against only C.C.'s case, not Blackwell's case. He then submitted a new request to the GBI, and McCullum's buccal swab DNA was then confirmed against the DNA collected in Blackwell's case.

[6] That code section provides that "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." OCGA § 24-4-413 (a). On appeal, McCullum does not challenge the admissibility of the evidence of his assaults against A.J., Theresea Blackwell, or Withers.

call from an auto repair shop reporting a rape in progress. When officers arrived at the shop, they first encountered McCullum and then heard a woman, A.J., screaming. Officers detained McCullum and then found A.J. chained to a pipe and bound with duct tape with her pants around her ankles. McCullum worked at the shop.

During the investigation of A.J.'s rape, officers in Kentucky learned that McCullum had lived in Fayetteville, North Carolina in 1995, contacted police in North Carolina, and suggested "it might be a good idea" for them to check for any unsolved homicides during that time. North Carolina police located a sexual assault kit with DNA evidence from the unsolved 1995 rape and murder of Theresa Blackwell, who had been found dead on the side of the road with her blouse pulled up, dried blood on her face and in her hair, and liga-ture marks on her neck, hands, and ankles; a fan belt and bungee cord were also found near her body. The DNA evidence from Theresa Blackwell's case produced a match in CODIS to McCullum. North Carolina police were able to confirm that in 1995, McCullum worked at an auto repair shop located less than a mile from where Theresa's

10

body was found.

Withers's body was found in Fulton County, Georgia on March 15, 1998. The dress she had been wearing was knotted around her arm, she had blunt-force trauma and lacerations about her head and face, and her cause of death was blunt-force trauma. Forensic testing revealed the presence of saliva on Withers's breast, a DNA profile was obtained from the saliva and added to CODIS, and that DNA was later matched to McCullum.

2. *The Sufficiency of the Evidence of Malice Murder*

McCullum contends that the evidence was insufficient as a matter of constitutional due process to support his conviction for the malice murder of Blackwell. He argues that the State failed to prove beyond a reasonable doubt that he caused Blackwell's death because there was no evidence that he gave Blackwell the cocaine that killed her or that otherwise connected him to the cocaine she took.

(a) In reviewing the sufficiency of the evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

11

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cooper v. State*, 317 Ga. 676, 682 (1) (895 SE2d 285) (2023) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)).

"A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). In other words, the essential elements that must be proven to convict someone of malice murder are (1) malice, (2) causation, and (3) the death of another person. See *Taylor v. State*, 303 Ga. 624, 626 (1) (814 SE2d 353) (2018). "Whether a killing is intentional and malicious is for the jury to determine from all the facts and circumstances." Id. (punctuation and citation omitted). A malicious intent to kill can be shown by conduct the defendant knows "is substantially certain to cause the result, whether or not he desires the result to occur." Id. (citation and punctuation omitted). "Cause," for purposes of malice murder, is "proximate cause." Id. at 627 (1). An injury proximately causes the victim's death when the injury (1) is "the sole proximate cause of the

death," (2) "directly and materially" contributes to the "happening of a subsequent accruing immediate cause of the death," or (3) "materially accelerated the death, although proximately occasioned by a pre-existing cause." Id. (citation and punctuation omitted).

The evidence at McCullum's trial, viewed in the light most favorable to the verdicts, authorized the jury to conclude that McCullum's conduct caused Blackwell's death because, at a minimum, he "materially accelerated" her death by beating and raping her, even if the death was "proximately occasioned by a pre-existing cause," that is, cocaine intoxication. See id. The evidence showed that McCullum and Blackwell were together before her death, he was the last person she was seen with when she was alive, semen found in Blackwell's vagina produced a DNA profile that matched McCullum's DNA, the absence of seminal fluid on Blackwell's shorts was more consistent with rape than consensual sex, and she had blunt-force injuries to her head that were consistent with hitting or beating. Although the medical examiner listed Blackwell's cause of death as "acute cocaine intoxication," he testified that the "combination" of

Blackwell's head injuries and her cocaine intoxication together caused her death; he also agreed that a rape would have further raised Blackwell's blood pressure and pulse, and so would have also contributed to her death. Based on this evidence, the jury was authorized to conclude that McCullum beat and raped Blackwell and left her on the side of the road while she was under the influence of cocaine. The jury was also authorized, based on the medical evidence, to conclude that the beating and rape caused her death because, according to the medical examiner's testimony, those events, in combination with the cocaine, caused her death.

As for malice, the evidence authorized the jury to infer malice from the condition Blackwell was found in—nearly dead by the side of the road, only partially dressed, with significant head injuries. This condition was also nearly identical to the conditions in which McCullum's other rape and murder victims were found. Like Blackwell, the murder and rape victims from North Carolina and Fulton County, Georgia were also found by the side of the road, partially clothed, with head injuries and bodily fluids containing McCullum's

DNA on them.

In sum, the evidence was constitutionally sufficient to support McCullum's conviction for the malice murder of Blackwell. See, e.g., *Taylor*, 303 Ga. at 626-628 (1) (affirming conviction for malice murder where the evidence authorized the jury to conclude that the defendant intended to hit the victim with his car, which was the proximate cause of the victim's death from an embolism).

(b) McCullum points out that the indictment charged that he "did with malice aforethought cause the death of Monica Blackwell, a human being, *by cocaine intoxication* in a manner unknown to the Grand Jury and dumping her without medical assistance on the side of the road." Relying on the indictment's language, he argues that the evidence therefore was not constitutionally sufficient because no evidence connected him to the cocaine Blackwell took, so the State did not prove that he caused her death "by cocaine intoxication" as the indictment specified. But in support of this argument, McCullum cites only the United States Supreme Court's pathmarking decision

15

on the due process standard for assessing the sufficiency of the evidence, *Jackson v. Virginia*, 443 U.S. at 319 (III) (B), and one of our decisions applying *Jackson*'s standard. And that standard asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt." Id. (second emphasis added). In other words, the Supreme Court's standard expressly says that evidence is measured against the essential elements of the crime, with no mention of other factual allegations set out in the indictment that are not elements of the crime. That is how we have consistently applied *Jackson*'s venerable standard since it was announced more than four decades ago. When our sufficiency decisions have looked to the indictment, they have done so only to determine which crime was charged, and whether the evidence was sufficient to authorize a jury to find the defendant guilty of that crime beyond a reasonable doubt. See, e.g., *Harrington v. State*, 300 Ga. 574, 577-578 (2) (a) (797 SE2d 107) (2017) (reversing armed robbery conviction because the evidence did not exclude the reasonable

16

hypothesis that the property in question, a cell phone, was taken during the defendant's earlier entry into the victim's home and before the victim interrupted the burglary-in-progress and was shot by the defendant, which meant there was not sufficient evidence of an essential element of the crime, i.e., that the phone was taken from the victim's person by the use of an offensive weapon); *Walker v. State*, 296 Ga. 161, 166-167 (1) (c) (766 SE2d 28) (2014) (reversing conviction for felony murder of a baby because, although the evidence may have been sufficient to show that the defendant smothered the baby, the indictment only charged him with felony murder based on predicate felonies—i.e., essential elements of the crime— of which there was not sufficient evidence). McCullum has not cited any decision (from Georgia or otherwise) that supports this indictment-allegation-focused approach, which his argument at best implicitly suggests. Nor has he offered any argument in support of departing from our longstanding approach to applying *Jackson* to the

essential elements of the crime.[7] Absent any such showing, we de-

---

[7] In *Musacchio v. United States*, 577 U.S. 237 (136 SCt 70, 193 LE2d 639) (2016), the United States Supreme Court reiterated that, under *Jackson v. Virginia*, a challenge to the constitutional sufficiency of the evidence looks to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the *essential elements of the crime* beyond a reasonable doubt." 577 U.S. at 243 (II) (citation and punctuation omitted) (second emphasis added). The question in *Musacchio* was whether, in assessing the constitutional sufficiency of the evidence, a jury instruction that "incorrectly adds one more element" to the charged crime requires proof beyond a reasonable doubt of that extra element; the Court concluded that such proof of an extra element was not required. Id. at 243-244 (II).

In a footnote, the Court noted that it left "open several matters," and "express[ed] no view on the question whether sufficiency of the evidence at trial must be judged by reference to the elements charged in the indictment, even if the indictment charges one or more elements not required by statute," among other questions. Id. at 244 (II) n.2. We must take the Court's explanation at face value: the Court simply took "no view" on the question whether the sufficiency analysis should measure evidence against not just the elements of the crime, but also extra "elements" added in the indictment that are not part of the crime. The Court offered nothing to suggest that this novel theory of sufficiency finds support in *Jackson* or any of its past decisions. Nor does the balance of *Musacchio* hint at such a theory. The dissent suggests that *Musacchio* is both "consistent with" and may go "further" than *Jackson* in this way when it explains sufficiency review as ensuring "that a defendant receives . . . a meaningful opportunity to defend against the charges against him," but that understanding of sufficiency review comes directly from—and indeed, is a quote from—*Jackson* itself. See *Musacchio*, 577 U.S. at 243 (II) (quoting *Jackson*, 443 U.S. at 314-315). We decline to read reasoning derived from *Jackson* itself as an expansion of that decision's standard for sufficiency review. Nor do we read *Jackson* itself to require more than what it says, which is to look at whether "*any* rational trier of fact could have found the *essential elements of the crime* beyond a reasonable doubt" when assessing the constitutional sufficiency of the evidence. *Jackson*, 443 U.S. at 319 (III) (B) (second emphasis added).

18

cline to expand that settled approach in the way McCullum's suffi-

ciency argument would require.[8] And as we just explained above,

the evidence here was sufficient to authorize the jury to find beyond

a reasonable doubt that each essential element of malice murder

[8] We do not decide a "difficult open question of federal constitutional law" here, as the dissent suggests. As we noted above, we do not read the Supreme Court's decision in *Musacchio* to have "opened" any such question anew about *Jackson*'s well-settled standard for assessing the constitutional sufficiency of the evidence, and McCullum has raised no argument that we should address and decide any such "open question." Given this posture, we merely apply *Jackson*'s established standard and measure the evidence against the essential elements of the charged offense, just like thousands of our decisions assessing the constitutional sufficiency of evidence in the nearly 45 years since *Jackson* was issued.

By contrast, the dissent would expand sufficiency review in a novel way without citing a single decision across the country that has actually adopted that expanded approach. Although the dissent proposes an alternative path to reversal by construing McCullum's sufficiency argument as a fatal variance claim, the dissent resolves this claim by applying its expanded view of the standard for reviewing the sufficiency of the evidence to reverse the trial court's denial of McCullum's motion for a directed verdict on malice murder. So under either the dissent's novel indictment-based sufficiency review or the construed fatal-variance theory, the dissent necessarily rejects the longstanding approach to sufficiency review that we apply here, under which McCullum's conviction is affirmed.

The dissent expresses concern about the "due process implications" of applying *Jackson*'s established approach, relying on a hypothetical prosecution for malice murder by shooting that the State proves at trial by evidence of poisoning or stabbing. We agree that scenario sounds unfair, but the defendant's recourse there is clear: he could raise a fatal variance claim and secure a new trial if the difference between the indictment and the evidence introduced at trial prevented him from preparing his defense, took him by surprise, or failed to adequately protect against another prosecution for the same offense. See, e.g., *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011). See also *Berger v. United States*, 295 U.S. 78, 82 (1) (55 SCt 629, 79 LE2d 1314) (1935).

was met. His claim therefore fails. [9]

3. *The Sufficiency of the Evidence of the Rape of Blackwell*

McCullum contends that the evidence at trial was not suffi-

cient to convict him of Blackwell's rape as either a matter of consti-

tutional due process or under OCGA § 24-14-6 ("To warrant a con-

viction on circumstantial evidence, the proved facts shall not only be

consistent with the hypothesis of guilt, but shall exclude every other

---

[9] McCullum's only enumeration and argument challenging his malice murder conviction is that the evidence was insufficient to support that conviction as a matter of constitutional due process. A sufficiency claim is different in kind from a fatal-variance claim, which "merely is concerned with proof introduced in support of allegations and is *not* concerned with the findings the jury may make after having heard the evidence." See *Oglesby v. State*, 243 Ga. 690, 692 (3) (256 SE2d 371) (1979) (emphasis added). See also *McCrary v. State*, 252 Ga. 521, 522, 524 (314 SE2d 662) (1984) (concluding that the evidence was constitutionally sufficient to support the conviction for felony murder predicated on robbery but reversing that conviction because of a fatal variance where the indictment for malice murder did not "fairly put[] the defendant on notice" that he would have to defend against a charge of robbery or a felony murder predicated thereon). Even to the extent that McCullum's sufficiency argument notes a difference between an allegation in the indictment and the proof at trial, he has offered no argument that this difference was a fatal variance—that is, that it prevented him from preparing his defense to the charges against him, took him by surprise, or failed to adequately protect him against another prosecution for the same offense. See, e.g., *Roscoe*, 288 Ga. at 776 (3). So we cannot reasonably construe McCullum's sufficiency arguments as a fatal-variance claim, and we express no opinion as to whether such a claim could have been successful were it properly before us.

reasonable hypothesis save that of the guilt of the accused.").

These claims fail. Viewed in the light most favorable to the verdict, the evidence showed that McCullum was the last person seen with Blackwell before she was found beaten and left on the side of the road, half naked, and with his sperm in her vagina, and the absence of seminal fluid in Blackwell's shorts was more consistent with rape than consensual sex. That evidence authorized a jury to find beyond a reasonable doubt that McCullum raped Blackwell, and to reject as unreasonable the hypothesis that Blackwell consented to having sex with McCullum. See OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of: . . . [a] female forcibly and against her will."). See also *Lewis v. State*, 306 Ga. 455, 457, 459 (1) (a) (831 SE2d 771) (2019) (evidence which included that the victim's body was discovered partially undressed, had defensive wounds, and had defendant's sperm in her vagina was sufficient to sustain his convictions for murder and rape, and authorized the jury to reject his alternate hypothesis, that he and the victim had consensual sex, as unreasonable); *Daniels v. State*, 298

Ga. 120, 123 (1) (779 SE2d 640) (2015) (evidence, including the state in which the victim's body was found, DNA evidence linking the defendant to the victim, and evidence of prior similarly violent sexual conduct by the defendant, was "sufficient to support the jury's conclusion that [the defendant] assaulted, raped, and murdered [the victim] as opposed to having engaged in consensual sex with her prior to her death at the hands of another"); *Walker v. State*, 282 Ga. 406, 408 (1) (651 SE2d 12) (2007) (evidence, which included the state in which the victim's body was discovered and DNA evidence linking the defendant to the victim, was sufficient to support the jury's conclusion that the defendant raped and murdered the victim, and authorized the jury to reject the defendant's alternate hypotheses, including that he and the victim had consensual sex).

4. *The Speedy Trial Motion*

McCullum contends that the trial court abused its discretion in

22

denying his motion to dismiss Count 5 (rape of C.C.) on constitutional speedy trial grounds.[10]

McCullum was initially indicted for C.C.'s rape in 2007. In 2011, he filed a motion to dismiss the indictment for violations of his right to a speedy trial under the federal and state constitutions. A month later, the case was dead-docketed because McCullum was transferred to Kentucky to stand trial for the rape of A.J. In 2017, he was reindicted for C.C.'s rape in a superseding indictment that also included charges for the rape and murder of Blackwell. On June 22, 2017, McCullum filed a "Motion to Adopt and Conform Applicable Motions Filed under [the] Previous Indictment," which encompassed the 2011 motion to dismiss on speedy trial grounds. The trial court held a hearing on the speedy trial motion, orally denied the motion, and then entered a written order of denial on July 13, 2017.

On June 24, 2019, McCullum renewed his speedy trial motion.

_____

[10] McCullum does not contend that the speedy trial provision found in Article I, Section I, Paragraph XI (a) of the Georgia Constitution offers greater protection than the analogous provision found in the Sixth Amendment to the United States Constitution, so we assess his claim under only the United States Constitution.

The trial court held another evidentiary hearing and again denied the motion. The court's July 25, 2019, order incorporated the factual findings and rulings from the July 2017 order and included additional findings with respect to the evidence that McCullum presented at the 2019 hearing.

Constitutional speedy trial claims are analyzed under the two-part framework set out in *Barker v. Wingo,* 407 U.S. 514, 530-533 (IV) (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647, 651 (II) (112 SCt 2686, 120 LE2d 520) (1992). Courts must first consider whether the length of time between the defendant's arrest and trial is "presumptively prejudicial," and a delay greater than one year is "typically presumed to be prejudicial." *Goins v. State*, 306 Ga. 55, 57 (2) (b) (829 SE2d 89) (2019) (citation and punctuation omitted). The State concedes that the decade-plus delay between McCullum's indictment and trial for C.C.'s rape was presumptively prejudicial, and we agree. See id.

If a court concludes the delay is presumptively prejudicial, as the trial court correctly did here, it must then apply a balancing test

24

that considers the length and reasons for the delay, the defendant's assertion of his speedy-trial right, and the prejudice to the defendant. See *Johnson v. State*, 300 Ga. 252, 257 (3) (794 SE2d 60) (2016). These factors are to be considered collectively along with the relevant circumstances, see *Leonard v. State*, 316 Ga. 827, 839 (6) (889 SE2d 837) (2023), and no one element is determinative of whether the right to a speedy trial has been violated, see *Sweatman v. State*, 287 Ga. 872, 873 (2) (700 SE2d 579) (2010). Because trial courts are generally better situated to apply this "ad hoc" approach, we "accept the factual findings of the trial court unless they are clearly erroneous" and we accept the trial court's conclusion "unless it amounts to an abuse of discretion." See *Henderson v. State*, 310 Ga. 231, 235 (2) (850 SE2d 152) (2020) (citation omitted). We next address each of the *Barker-Doggett* factors in turn.

(a) *The Length of the Delay*

As stated above, we agree with the trial court that the 10-plus-year delay between McCullum's indictment and trial for C.C.'s rape was presumptively prejudicial. See *Goins*, 305 Ga. at 57 (2) (b). The

trial court found that McCullum had been incarcerated out of state for eight of the ten-plus years that comprised the delay, thus mitigating the weight the delay's length had against the State, and ruled that "[w]eighing the length of the delay under the unique facts and circumstances of this case, the delay should be weighed against the State but not heavily." We agree that the delay was uncommonly long, yet under the circumstances of this case, we see no abuse of the trial court's discretion in weighing that factor against the State but not heavily given that a presumptively prejudicial length of delay does not "automatically trump the other *Barker* factors" and must instead be considered as part of the "case-by-case balancing required by *Barker* and this Court's precedent." See *State v. Pickett*, 288 Ga. 674, 678 (2) (d) n.1 (706 SE2d 561) (2011) ("[A] bright-line rule allowing the presumption of prejudice after any period of delay to automatically trump the other *Barker* factors would be contrary to the case-by-case balancing required by *Barker* and this Court's precedent.").

(b) *The Reasons for the Delay*

The trial court found that from 2007 to 2009, McCullum was incarcerated in North Carolina and Kentucky, so his incarceration during that period was not attributable to the pending rape charge in Georgia. From 2009 to 2011, the trial court found, McCullum was incarcerated in Georgia while awaiting trial for C.C.'s rape but, at the same time, was also serving his sentence for his North Carolina conviction. The trial court also found that from September 2011 to February 2017, the case was dead docketed at the State's request to permit Kentucky's prosecution of McCullum for the rape of A.J. McCullum was extradited back to Georgia in February 2017, and since February 2017, McCullum had been arraigned and motions had been heard. The trial court also considered the complexity of the case and the State's difficulty in locating an out-of-state witness, noted that the case appeared on "several trial calendars" during this period but did not go forward, and concluded that this factor "should weigh against the State, but not heavily," in part because McCullum bore "some moderate responsibility for the delay," as he represented

27

at one point that he was not ready to proceed.

The record supports the trial court's findings regarding the reasons for the delay, and under the circumstances of this case, we see no abuse in the trial court's discretion in ruling that those reasons should be weighed against the State, but not heavily so. See *Barker*, 407 U.S. at 531 (IV) ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while an unintentional delay, such as that caused by the mere negligence of the prosecuting attorneys or the overcrowded docket of the trial court, "should be weighted less heavily."). Accord *Wilkie v. State*, 290 Ga. 450, 452 (721 SE2d 830) (2012); *Sweatman*, 287 Ga. at 875 (4); *Hassel v. State*, 284 Ga. 861, 862 (b) (672 SE2d 627) (2009).

(c) *The Assertion of the Right to a Speedy Trial*

The trial court found that McCullum failed to raise the speedy trial issue until more than two years after his indictment and weighed this factor "against Defendant, but not heavily." Neither party asserts that the trial court abused its discretion in so ruling,

and we see no abuse of discretion either. See *Pickett*, 288 Ga. at 676 (2) (c) (3) ("[A] defendant may assert his constitutional right to a speedy trial at any time after he is arrested. . . . However, once his constitutional right accrues, the defendant has the responsibility to assert it, and delay in doing so normally will be weighed against him.") (citations omitted).

(d) *Prejudice*

In assessing the prejudice of the delay to McCullum, the trial court considered the "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." See *Doggett*, 505 U.S. at 654 (III) (A) (quoting *Barker*, 407 U.S. at 532 (IV)) (punctuation omitted)). The trial court noted that this Court has recognized a "minimal possibility of oppressive pretrial incarceration" when a defendant was incarcerated for a separate offense, see *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d

32) (2005) (punctuation omitted);[11] that McCullum had presented no evidence that he experienced oppressive pretrial incarceration or undue stress or anxiety due to the pending Georgia rape charge; and that "[m]ost critically . . . the record contains no evidence nor any articulated prejudice to Defendant's prospective defense likely to occur at trial."[12] Therefore, the court ruled that "[u]nder the unique

---

[11] On this point, McCullum relies on *Redding v. State*, 313 Ga. 730 (873 SE2d 158) (2022) (*"Redding II"*) to argue that the trial court abused its discretion in relying on McCullum's incarceration on the North Carolina charges in finding no prejudice. But in *Redding II*, we held that the trial court erred in ruling that the defendant's probation hold on other charges, which prevented him from making bond, precluded the need to assess prejudice associated with pretrial incarceration. See *Redding II*, 313 Ga. at 735-736 (2). *Redding II* did not overrule *Williams* or its recognition that the possibility of oppressive pretrial incarceration is generally minimal when a defendant is already incarcerated for unrelated offenses, so we see no abuse of the trial court's discretion here, where the trial court plainly assessed this factor and whether McCullum provided any evidence thereon as part of its prejudice analysis.

[12] In its 2019 order, which incorporated the factual findings and rulings of the 2017 order, the trial court noted that at the more recent hearing McCullum was permitted to provide additional evidence on prejudice. McCullum called an investigator from the public defender's office who testified that he was able to locate a witness who was familiar with McCullum and C.C. but that the witness was hostile and did not wish to speak with him further. Our review shows that the witness whom the investigator referred to was Meeks, the owner and operator of the mechanic shop where McCullum worked and where he raped C.C. The investigator testified that "to my knowledge she was supposed to be able to testify or give me a statement about her seeing [McCullum] with the alleged victim two or three days after the alleged incident was supposed to have happened," but that when he spoke with her in 2019, "she couldn't recall specifically seeing him with her after the incident because she

30

circumstances of this case . . . this final factor is weighed heavily against Defendant."

The record supports the trial court's findings that McCullum failed to present sufficient evidence—and that the record otherwise lacked sufficient evidence—of prejudice under the fourth *Barker-Doggett* factor. Although we recognize that extraordinarily long pretrial delays "simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice," it remains true that "the passage of time is not alone sufficient to sustain a speedy trial claim." *Williams v. State*, 277 Ga. 598, 601 (1) (d) (592 SE2d 848) (2004). Under the circumstances of this case, the trial court did not abuse its discretion in weighing this factor against McCullum. See *Williams v. State*, 314 Ga. 671, 680 (4) (d) (878 SE2d 553) (2022) ("[W]hile a presumption

couldn't recall the incident time with any specificity." He added, "she seemed hostile. She didn't want to be involved in any form or fashion, and so she was really short with me." We see no abuse of discretion in the trial court's conclusion that even in light of this evidence, "there is still no showing of specific prejudice by the defense."

of prejudice always exists once the threshold of presumptive prejudice is satisfied, the prejudice prong may be weighed against the defendant even in cases of excessive delay." (citation and punctuation omitted)). See also *Burney v. State*, 309 Ga. 273, 286 (4) (a), 290-291 (4) (d) (845 SE2d 625) (2020) (holding that the defendant failed to make the requisite showing of prejudice under the fourth *Barker-Doggett* factor despite presumptively prejudicial six-and-a-half-year delay). Cf. *Williams*, 279 Ga. at 109-110 (1) (d) ("We agree with the trial court that while the prejudice factor must not be weighed heavily against Williams, he has been unable to show any specific impairment to his defense attributable to the delay.").

(e) *Balancing the Factors*

After making the above findings and conclusions, the trial court balanced the factors and denied the motion, noting that the length and reason for the delay weighed against the State, but not heavily; McCullum's two-year delay in asserting his speedy-trial right weighed "slightly" against him; and the absence of prejudice

weighed "heavily" against McCullum, so on balance and in the absence of any evidence "that the State delayed the case to hamper the defense or gain a tactical advantage," the lengthy delay was "reasonable under the circumstances and in light of the complexity of the case." The trial court's detailed and reasoned denial orders show that it fulfilled its duty to weigh all four *Barker-Doggett* factors in the context of the particular circumstances of this case. See *Jenkins v. State*, 294 Ga. 506, 513 (2) (c) (755 SE2d 138) (2014). And under the circumstances of this case, we see no abuse in the trial court's discretion in applying the *Barker-Doggett* framework and denying McCullum's motions to dismiss Count 5 of the indictment for the violation of his constitutional right to a speedy trial. See id.

5. *The Motion to Sever*

McCullum finally contends that the trial court abused its discretion by not severing Count 5 (rape of C.C.) from Counts 1-4 (rape and murder of Blackwell) because he had an "absolute right to sever" and the crimes against each woman were so dissimilar.

McCullum filed a pretrial motion to sever, which the trial court

denied after a hearing. As relevant here, the trial court ruled that "under OCGA § 24-4-413, the sexual assault of [C.C.] would clearly be admissible during the trial of the sexual assault and murder of Monica Blackwell."

A defendant has an "absolute right" to severance when charges are joined together "solely because they are of the same or similar character," while severance lies within the trial court's discretion when joinder is based on "the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." See *Harris v. State*, 314 Ga. 238, 281 (4) (875 SE2d 659) (2022) (citations and punctuation omitted). But multiple offenses are not joined together "solely because they are the same or similar character" if evidence of one offense would be admissible at a separate trial for the other. See *Carson v. State*, 308 Ga. 761, 765 (2) (a) (843 SE2d 421) (2020) (quoting *Green v. State*, 291 Ga. 287, 289 (2) (728 SE2d 668) (2012)). Typically, a trial court does not abuse its discretion in denying a motion to sever where evidence of one charge would be admissible in the trial of the other and there is no evidence that the

joinder confused or misled the jury. See *Carson*, 308 Ga. at 765-766
(2) (a); *Heard v. State*, 287 Ga. 554, 558-559 (4) (697 SE2d 811)
(2010). Cf. *Harris*, 314 Ga. at 282 (4) (concluding the trial court
abused its discretion in denying defendant's motion to sever the
counts charging the defendant with a sex crime against a minor from
charges related to the death of the defendant's son where the of-
fenses were "of an entirely different character").

McCullum concedes that, under OCGA § 24-4-413, the evidence
of C.C.'s rape "might be admissible" during the trial of Blackwell's
rape and murder, and we agree with the trial court that the evidence
of C.C.'s rape would have been admissible under Rule 413 at a trial
for Blackwell's rape and murder. See OCGA § 24-4-413 (a) (in any
criminal proceeding where the defendant is accused of sexual as-
sault, evidence that the defendant committed other sexual assaults
is admissible for any relevant purpose). He also has not offered any
evidence that the failure to sever his trial for C.C.'s rape from his

trial for Blackwell's rape and murder confused or misled the jury.[13] See, e.g., *Simmons v. State*, 282 Ga. 183, 185-186 (4) (646 SE2d 55) (2007). Accordingly, we conclude that the trial court did not abuse its discretion in refusing to sever Count 5 (rape of C.C.) from Counts 1-4 (rape and murder of Blackwell). See *Carson*, 308 Ga. at 765-766 (2) (a); *Heard*, 287 Ga. at 558-559 (4).

*Judgment affirmed. All the Justices concur, except Peterson, P.J., Bethel, and McMillian, JJ., who dissent in part.*

---

[13] McCullum concedes that the evidence of C.C.'s rape "might be admissible" under Rule 413 but contends that it should have been excluded under OCGA § 24-4-403 (Rule 403) because the probative value of the evidence of the sexual assault of C.C. did not substantially outweigh the prejudicial effect of McCullum "having to defend multiple trials within a trial." But he has not pointed on appeal to any unfair prejudice that resulted from the introduction of this evidence. At most, he argues that evidence of C.C.'s rape should have been excluded because it tended to support the State's theory that the presence of his semen in Blackwell's vagina resulted from rape rather than his contention that he and Balckwell had consensual sex. But although "inculpatory evidence is inherently prejudicial in a criminal case," the risk of *some* prejudice does not require exclusion. "[I]t is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." See *Harris v. State*, 313 Ga. 225, 232 (3) (869 SE2d 461) (2022). Because McCullum has not made this showing, we conclude that the trial court did not abuse its discretion by failing to rule that evidence of C.C.'s rape should be excluded under Rule 403 and granting the motion to sever on that basis. See *McWilliams v. State*, 304 Ga. 502, 509-511 (3) (2018) (reviewing for an abuse of discretion the defendant's claim that the admission of extrinsic evidence under OCGA §§ 24-4-404 (b) and 24-4-413 violated Rule 403 and concluding the probative value of the prior sexual assaults, which tended to disprove the defendant's claim that the murder victim's injuries were accidental, was not outweighed by the risk of unfair prejudice). See also *Carson*, 308 Ga. at 765-766 (2) (a); *Heard*, 287 Ga. at 558-559 (4).

MCMILLIAN, Justice, dissenting in part.

Under the well-established standard of *Jackson v. Virginia,* 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), this Court determines whether evidence is sufficient as a matter of constitutional due process by examining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (III) (A) (emphasis in original). The United States Supreme Court has also recently indicated that, consistent with *Jackson,* sufficiency review under this legal standard may include something more than only looking at the elements of the crime:

> Sufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury. On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend against the charge against him and a jury finding of guilt beyond a reasonable doubt."

*Musacchio v. United States*, 577 U.S. 237, 243 (II) (136 SCt 709, 193 LE2d 639) (2016) (quoting *Jackson,* 443 U.S. at 314-15; other citation and punctuation omitted).

Here, the State elected to allege in Count 1 of the indictment that in violation of OCGA § 16-5-1 (a), McCullum "did with malice aforethought cause the death of Monica Blackwell, a human being, by cocaine intoxication in a manner unknown to the Grand Jury and dumping her without medical assistance on the side of the road." McCullum defended against this charge at trial by moving for a directed verdict of acquittal on the grounds that the State had failed to present any evidence to support the causation element alleged in the indictment—that McCullum had anything to do with drugging Blackwell. It is now clear from the record that the motion should have been granted. However, despite the lack of evidence supporting this causation allegation, the Court has now affirmed the malice murder conviction on sufficiency grounds on a different theory—that McCullum beat and raped Blackwell and left her by the side of the road to die—and has concluded that these facts sufficiently supported the statutory elements of the crime of malice murder.

I have serious concerns about the due process implications of

38

such an approach.[14] Moreover, in addressing a different question related to sufficiency analysis, the *Musacchio* Court left open several matters, including whether sufficiency should be evaluated based on what has been alleged in the indictment: "we express no view on the question whether sufficiency of the evidence at trial must be judged by reference to the elements charged in the indictment, even if the indictment charges one or more elements not required by statute." Id. at 244, n.2. The Court has now decided to answer this difficult open question without analysis, relying on the "elements" language in the *Jackson* test. However, I would follow two lines of authority from our Court that have addressed similar sufficiency arguments but without deciding which line controls. Under either, I would reverse the malice murder conviction and remand the case to the trial court to resentence on one of the felony murder convictions, which

---

[14] Under the Court's reasoning, the State could prosecute someone for malice murder by shooting and prove the case by any other means such as poisoning or stabbing, and the evidence would be sufficient as a matter of constitutional due process because the statutory elements of malice murder would be satisfied, notwithstanding that the defendant may have a separate claim based on a fatal variance theory.

39

had previously been vacated as a matter of law, and potentially on the rape conviction pertaining to Blackwell. For these reasons, I respectfully dissent in part to the Court's opinion.[15]

1. *Count 1: Malice Murder*

Relying on how the State alleged malice murder in the indictment, McCullum contends that the evidence was insufficient because the State failed to produce any evidence that McCullum supplied or was in any way involved in Blackwell's ingestion of the cocaine.[16] The State argues that the other-acts evidence of McCullum's attacks of women showed that McCullum would beat, restrain, or incapacitate his victims,[17] and since McCullum was seen with Blackwell two days before she was found, the jury could have inferred that he used cocaine to incapacitate Blackwell. My review of the record shows that the only evidence presented at trial on this issue was Dr.

---

[15] I fully concur in the remainder of the Court's opinion.

[16] The Court has rejected this argument, describing it as a "novel theory of sufficiency." (Maj. Op. at 19 n.7.) However, as explained below, this type of sufficiency argument relying on the allegations of the indictment has been considered by our Court and federal appellate courts in multiple cases.

[17] It does not appear from our record that McCullum drugged any of the other women he attacked.

Gowitt's testimony that he did not have "any idea how the cocaine got in [Blackwell's] system," speculating that it could have been either voluntary or involuntary and that there was simply no way for him to know.[18] And I would reject the State's argument that a jury is authorized to infer from the other-acts evidence that McCullum used cocaine to incapacitate Blackwell, because that evidence, though bearing many similarities to Blackwell's attack, did not involve drugging the victims. Thus, McCullum is correct that the evidence at trial did not show that he caused Blackwell's cocaine intoxication.

Although the Court asserts that such an approach to McCullum's sufficiency claim is "novel" and an extension of *Jackson*, we have held in cases before and after *Mussachio* was issued that when the State elects to charge a crime under a particular theory of prosecution, "we cannot affirm a conviction based upon a legal theory of

---

[18] I note that even if there was evidence that Blackwell's cocaine intoxication was involuntary, which would permit the jury to infer that she was murdered by involuntary or forced intoxication, that still would not authorize the jury to infer that McCullum was the person who intoxicated her, absent some evidence showing that it was him.

the crime with which the defendant was never charged." *Walker v.*

*State*, 296 Ga. 161, 167 n.12 (1) (c) (766 SE2d 28) (2014) (evidence

not sufficient to support felony murder of child predicated on murder

of mother when the State theorized that the murder of the mother

caused the death of the child by being unable to come to the aid of

the child when the defendant asphyxiated the child with his hand);

see *Harrington v. State*, 300 Ga. 574, 577-78 (2) (a) (797 SE2d 107)

(2017) (where indictment alleged that defendant committed armed

robbery by "unlawfully taking a cell phone from the immediate pres-

ence of [the victim], by use of a handgun," the State was required to

prove beyond a reasonable doubt that defendant used the handgun

to take the cell phone prior to or contemporaneously with the taking

(punctuation omitted)).[19] Because the State presented no evidence

---

[19] The Court distinguishes *Harrington* and *Walker* as sufficiency deci-
sions that have looked to the indictment, "only to determine which crime was
charged." (Maj. Op. at 17.) While it is true that these cases looked at the in-
dictment to determine which crime was charged, the analysis did not end there.
Both cases looked at the specific allegations of the indictment and the manner
in which essential elements of the crime were charged in order to evaluate suf-
ficiency of the evidence. See *Harrington*, 300 Ga. at 577 (concluding that State
failed to support that cell phone was taken from the "immediate presence" of
the victim "by the use of a handgun" as alleged in the indictment); *Walker*, 296

linking McCullum to cocaine whatsoever, much less to the cocaine in Blackwell's system, under this line of cases, the evidence is legally insufficient as a matter of constitutional due process to sustain McCullum's conviction on Count 1, the malice murder of Blackwell, as charged in the indictment.

However, in other cases, this Court has reviewed similar challenges, including a challenge to the sufficiency of the evidence, as in actuality a claim that the evidence at trial fatally varied from the allegations of the indictment. For example, in *Lebis v. State*, 302 Ga. 750, 759-60 (II) (B) (808 SE2d 724) (2017), we noted that "Lebis raised sufficiency of the evidence rather than a 'fatal variance' between the language of the indictment, which charged joint possession, and the proof at trial," yet the Court went on to analyze the claim as a fatal variance issue. Also, in *Mathews v. State*, 314 Ga. 360, 365 (2) (877 SE2d 188) (2022), we summarized the appellant's

Ga. at 166 (holding that State failed to prove felony murder predicated on the felony alleged in the indictment even though the evidence supported a felonious assault on the victim that caused his death).

arguments "that the trial court erred in allowing the prosecution to deviate from the allegation in the indictment and offer proof that he committed the crimes in an uncharged manner" and "that the evidence at trial and the court's instructions to the jury on party to a crime allowed him to be convicted for merely helping co-defendant Jackson, while the indictment specifically charged him with directly committing the crimes," and then stated "[w]e interpret [his] argument as raising [a] fatal variance [claim]." Id; see *Brown v. State*, 307 Ga. 24, 27-28 (1) (834 SE2d 40) (2019) (summarizing test for fatal variance claim).

One difference between a fatal variance claim and a claim for insufficiency of the evidence is that a fatal variance claim is an error that must be asserted at trial and ruled upon to be preserved for appellate review. See *Hughes v. State*, 310 Ga. 453, 456 (2) n.5 (851 SE2d 580) (2020); *Eberhart v. State*, 307 Ga. 254, 262 n.7 (2) (a) (835 SE2d 192) (2019); *Davis v. State*, 301 Ga. 397, 402 (4) (801 SE2d 897) (2017). *Compare Jeffries v. State*, 272 Ga. 510, 512 (5) (530 SE2d 714) (2000) (citing OCGA § 5-6-36 (a) to support that the defendant

44

"is simply incorrect that the failure to move for a directed verdict at the close of the evidence precludes [the defendant] from contending on appellate review that the evidence is insufficient to support the verdict"). Here, after the State rested, McCullum "move[d] for a directed verdict of acquittal as to Counts 1 through 4. That is the Malice Murder, Count 1, of Monica Blackwell did cause the death by malice aforethought by cocaine intoxication and by dumping her without medical assistance. . . ." In making that argument, he never explicitly raised or argued the term "fatal variance," but his argument included, inter alia, that "[w]e have no evidence or testimony that Mr. McCullum in any way caused [Blackwell] or forced her, directed her to ingest cocaine. That was the cause of death."[20] The trial court ruled "I believe there is sufficient evidence to go to the jury. I would deny the motion to dismiss at this time, or a motion for direct verdict."

Thus, if I were to analyze this claim as one asserting a fatal

---

[20] McCullum's primary argument for a directed verdict was that "there is essentially no evidence that he caused the death and raped her in Count 1 through 4."

45

variance, the procedural posture of this claim would require consideration of whether the trial court erred in denying the motion for a directed verdict of acquittal on the malice murder count, even though McCullum did not enumerate as error the denial of his motion for a directed verdict. See *Adams v. State*, 288 Ga. 695, 699 (2) (707 SE2d 359) (2011) (rejecting claim that trial court erred in denying motion for directed verdict asserting that the State failed to prove that the offenses occurred within the dates alleged in the indictment); *Felder v. State*, 270 Ga. 641, 643 (2) (514 SE2d 416) (1999) (holding that trial court correctly denied motion for a directed verdict of acquittal when "the evidence is sufficient to show that the cigarettes were taken from the person of the victim as alleged in the indictment"). As explained above, the State failed to produce any evidence supporting that McCullum supplied or otherwise caused Blackwell's cocaine intoxication. Accordingly, I would conclude that the trial court erred in denying the motion for a directed verdict. See *Ellington v. State*, 314 Ga. 335, 339 (2) (877 SE2d 221) (2022) ("The standard of review for the denial of a motion for a directed verdict of

46

acquittal is the same as for determining the sufficiency of the evidence to support the conviction.") (citation omitted); *Fitts v. State*, 312 Ga. 134, 141 (3) (859 SE2d 79) (2021) (explaining that "'[t]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction'") (citation omitted).

Because McCullum moved for a directed verdict of acquittal on the malice murder charge on the same grounds that he now asserts on appeal and, as a result, under either line of cases, the malice murder conviction must be reversed, I would conclude that it is unnecessary for this Court to determine whether his claim should be analyzed as a challenge to the sufficiency of the evidence as a matter of constitutional due process or whether his claim is in actuality that the evidence at trial fatally varied from the allegation that McCullum caused Blackwell's death by cocaine intoxication.

This approach is preferable for several reasons. First, it recognizes that although *Mussachio* referenced the familiar *Jackson* test

47

relying on the elements of the crime, it also went further and explained what minimum due process requires in this context—"that a defendant receives . . . a meaningful opportunity to defend against the charge against him." *Musacchio*, 577 U.S. at 243 (II). It is unclear how this language is applied because *Mussachio* explicitly left open the question of whether the allegations of the indictment factor into the analysis, but it is difficult to discern how to evaluate "a meaningful opportunity to defend against the charge" without some reference to the allegations of the indictment.

Second, although this issue remains an open question that the United States Supreme Court has recognized but not decided, this Court has gone ahead and decided it. Yet, federal appellate courts who have considered the issue have declined to decide it, indicating that the answer is not as straightforward as the Court thinks it is.[21] Instead, in almost every one of those cases, the federal court has

---

[21] Although not binding on us, the decisions of federal appellate courts are persuasive, particularly on matters of federal constitutional law. See *Elliott v. State*, 305 Ga. 179, 187 (II) (B) (824 SE2d 265) (2019) ("The construction of similar federal constitutional provisions, though persuasive authority, is not binding on this state's construction of its own Constitution.") (cleaned up).

assumed without deciding that the allegations of the indictment were essential in evaluating sufficiency.[22] See *United States v. Naushad*, 68 F4th 380, 384 (II) (8th Cir. 2023) (recognizing that *Musacchio* left open the question of whether sufficiency of the evidence must be judged by reference to non-statutory elements of the indictment and doubting that sufficiency review includes the non-statutory elements, but concluding that even assuming that the non-statutory element was essential, the government proved its case); *United States v. Said*, 2023 WL 167213, at *4 (V) (A) (1) (5th Cir. Jan. 12, 2023) (declining to resolve issue of "whether an erroneously heightened indictment obligates the government to prove additional elements," but concluding that assuming that the government was required to prove the additional elements alleged, the government

---

[22] The Tenth Circuit has noted that the question of whether sufficiency as a matter of constitutional due process should be evaluated with respect to the allegations in the indictment remains open, but in that case, the defendant had failed to preserve the error for ordinary appellate review, and the court concluded that the defendant failed to show plain error. See *United States v. Brown*, 654 Fed. Appx. 896, 907 (II) (2) (B) (1) (10th Cir. 2016) (noting that *Musacchio* left open the question of whether indictment's reference to "cruel and unusual punishment" required the government to prove that the defendants were convicted inmates but concluding that defendants failed to show clear and obvious error under plain error review).

produced sufficient evidence) (citation and punctuation omitted); *United States v. Bedoy*, 827 F3d 495, 509 (II) (B) (1) (5th Cir. 2016) (*Musacchio* leaves open the question of "whether an indictment can add an element"; "assuming—without deciding—the Government had to prove this additional element," the evidence was sufficient).

In addition, my review of decisions of state courts of last resort since *Musacchio* shows that this Court would be the first state supreme court to recognize that *Musacchio* left open the question of whether sufficiency of the evidence at trial must be judged by reference to the manner in which essential elements of the crime are charged in the indictment—in this case, causation by cocaine intoxication—and go ahead and decide it.[23]

---

[23] One state court of last resort has considered a closely related issue. The Texas Criminal Court of Appeals has held that "[i]f a jury instruction includes the elements of the charged crime but incorrectly adds an extra, made-up element, a sufficiency challenge is still assessed against the elements of the charged crime, regardless of the source of the extra element." *Ramjattansingh v. State*, 548 S.W.3d 540, 552 (IV) (2018). In so holding, the Texas court distinguished *Musacchio* as involving "actual statutory elements" and not "a made-up element" in the indictment. See id. at 546 n.13 (II) (A). Here, all Justices agree that causation is an essential element of malice murder although there is disagreement on whether the manner in which causation is alleged is part of the essential elements of the crime.

For these reasons, I conclude that it is unnecessary to decide this difficult open question of federal constitutional law. Instead, I would rely on the ample authority from our Court in evaluating McCullum's sufficiency argument while finding it unnecessary to decide which line of authority controls and reverse McCullum's conviction for malice murder.

2.    *Counts 2 and 3: Felony Murder*

Because I would reverse the malice murder conviction, McCullum's felony murder convictions would no longer stand vacated as a matter of law. See *Clough v. State*, 298 Ga. 594, 597-98 (2) (783 SE2d 637) (2016); *Wallace v. State*, 275 Ga. 879, 881 (2) (572 SE2d 579) (2002), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) n.3 (820 SE2d 640) (2018). Thus, I will also address his challenges to the sufficiency of the evidence to support those convictions as well.[24]

---

[24] In so doing, I note that in addition to arguing that the evidence to support these convictions was constitutionally insufficient, McCullum also cites OCGA § 24-14-6 and argues that the evidence was wholly circumstantial and does not exclude what he characterizes as the reasonable hypothesis that

Count 2 of the indictment alleges that McCullum caused the death of Blackwell "in the commission of the offense of rape, a felony," and Count 3 of the indictment alleges that he caused her death "in the commission of the offense of Aggravated Assault with the intent to Rape, a felony." "A person commits the offense of murder, when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). "A person commits the offense of rape when he has carnal knowledge of: . . . [a] female forcibly and against her will." OCGA § 16-6-1 (a). And "[a] person commits the offense of aggravated assault when he . . . assaults:[25] [w]ith intent . . . to rape." OCGA § 16-5-21 (a) (1).

Here, for felony murder predicated on rape, the State was required to prove beyond a reasonable doubt that McCullum caused

McCullum had consensual sex with Blackwell. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

[25] An assault consists of the "[a]ttempt[] to commit a violent injury to the person of another" or the commission of "an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a).

Blackwell's death in the commission of raping her and that the rape proximately caused Blackwell's death. See *Eubanks v. State*, 317 Ga. 563, 567-78 (2) (894 SE2d 27) (2023); *State v. Jackson*, 287 Ga. 646, 660 (6) (697 SE2d 757) (2010). The State was likewise required to prove the same elements with respect to the felony murder predicated on aggravated assault with the intent to rape. Id. Proximate cause requires "that the death *actually happened* in a way that was a reasonably foreseeable result of the criminal conduct—that is, the death must also have been a probable or natural consequence of the criminal conduct." *Eubanks*, 317 Ga. at 569 (2) (a) (ii) (cleaned up; emphasis in original). See also *Jackson*, 287 Ga. at 652 (2), 654 (3) ("Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause," and proximate cause exists if the predicate felonious conduct "directly and materially contributed to the happening of a subsequent accruing immediate cause of the death," or if "the homicide was committed within the res gestae of the felony and is one of the incidental, probable consequences of

the execution of the design to commit" the predicate felony (citations and punctuation omitted)).

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial was constitutionally sufficient to authorize a jury to find beyond a reasonable doubt that McCullum assaulted and raped Blackwell and sufficient under Georgia statutory law to reject as unreasonable the hypothesis that Blackwell consented to having sex with McCullum. That evidence included that McCullum was the last person seen with Blackwell before she was found beaten up and dumped on the side of the road, half naked, and with his sperm in her vagina. See *Johnson v. State*, 307 Ga. 44, 48 (2) (a) (834 SE2d 83) (2019) (circumstantial evidence, including that defendant was the last person seen with the victim before his death, was sufficient to support murder conviction); *Lewis v. State*, 306 Ga. 455, 457, 459 (1) (a) (831 SE2d 771) (2019) (evidence which included that victim's body was discovered partially undressed, had defensive wounds, and had defendant's sperm in her vagina was sufficient to sustain his convictions for murder and rape, and authorized jury to

reject his alternate hypothesis as unreasonable); *Daniels v. State*, 298 Ga. 120, 123 (1) (779 SE2d 640) (2015) (evidence including the state in which victim's body was discovered, DNA evidence linking defendant to victim, and evidence of prior similarly violent sexual conduct by defendant "were sufficient to support the jury's conclusion that [defendant] assaulted, raped, and murdered [victim]"); *Walker v. State*, 282 Ga. 406, 408 (1) (651 SE2d 12) (2007) (evidence, which included the state in which victim's body was discovered and DNA evidence linking defendant to victim, was sufficient to support jury's conclusion that defendant raped and murdered victim, and authorized jury to reject defendant's alternate hypotheses).

Moreover, the evidence was sufficient to authorize the jury to find beyond a reasonable doubt that the aggravated assault and/or rape proximately caused Blackwell's death. Because there is nothing improbable or unnatural about a death occurring as the result of a violent beating and sexual assault that ended with the victim being left for dead, Blackwell's death was a reasonably foreseeable result of the aggravated assault and rape. To that end, Dr. Gowitt testified

that any beating and rape sustained by Blackwell "absolutely" contributed to her death. That Dr. Gowitt listed Blackwell's ultimate cause of death as acute cocaine intoxication does not change the conclusion that McCullum's assault and rape of Blackwell proximately caused her death because evidence was presented that showed that the beating and rape by McCullum, along with his dumping of her on the roadside without medical assistance, materially contributed to and accelerated her death, which is sufficient to show that McCullum's felonious conduct caused her death. See *Stribling v. State*, 304 Ga. 250, 253-54 (1) (818 SE2d 563) (2018); see also *Virger v. State*, 305 Ga. 281, 289 (3) (824 SE2d 346) (2019) (evidence sufficient for jury to find that by allowing victim to suffer rather than promptly seeking medical aid, defendant proximately caused victim's death).

In sum, I would conclude that the evidence presented at trial was constitutionally sufficient to authorize the jury to find beyond a reasonable doubt that McCullum caused Blackwell's death in the commission of his assault and rape of her and was therefore guilty of Count 2, felony murder predicated on rape, and Count 3, felony

murder predicated on aggravated assault with intent to rape. Because, as discussed above, Counts 2 and 3 would no longer be vacated by operation of law and the evidence would be constitutionally sufficient to support those charges, I would vacate that portion of the trial court's final disposition that had vacated Counts 2 and 3 as a matter of law and remand this case for sentencing in accordance with the law. In so doing, I would remind the trial court that although McCullum was found guilty on both counts of felony murder, one predicated on his rape of Blackwell and the other on his aggravated assault of her, he cannot be sentenced on both those counts because there was only one victim. See *Noel v. State*, 297 Ga. 698, 700 (2) (777 SE2d 449) (2015) ("[A] defendant found guilty of the felony murder of the same victim through the commission of more than one felony may only be sentenced on one felony murder charge and the remaining felony murder charges stand vacated by operation of law."); *Warren v. State*, 283 Ga. 42, 44 (4) n.2 (656 SE2d 803) (2008) (same). Moreover, "[i]n cases like this one, where a defendant is found guilty on multiple counts of felony murder against the same

victim, the decision as to which of the felony murder verdicts should be deemed vacated—a decision that may affect which other verdicts merge and thus what other sentences may be imposed–is left to the discretion of the trial court." *Hinton v. State*, 304 Ga. 605, 608 (3) (820 SE2d 712) (2018) (citation and punctuation omitted); see also *Cowart v. State*, 294 Ga. 333, 336 (2) (751 SE2d 399) (2013).

3. *Count 4: Rape of Blackwell.*

As the above discussion makes clear, the evidence presented at trial authorized the jury to find McCullum guilty beyond a reasonable doubt of raping Blackwell. Nonetheless, the trial court would have the discretion to decide which felony murder verdict it would enter a conviction and sentence upon and which one would be vacated by operation of law, and that decision "may affect which other verdicts merge and thus what other sentences may be imposed." *Hinton*, 304 Ga. at 608 (3) (citation and punctuation omitted).

> [I]f, in exercising that discretion, the trial court elects to sentence the defendant on a felony murder count predicated on one crime, then it must also sentence him on any remaining crime that served as a predicate to a vacated felony murder count when the other crime does not merge

with the felony murder conviction on which a sentence was entered.

Id. at 608-09 (3); see also *Davis v. State*, 301 Ga. 397, 404 (5) n.7 (801 SE2d 897) (2017); *Stewart v. State*, 299 Ga. 622, 627-28 (3) (791 SE2d 61) (2016); *Leeks v. State*, 296 Ga. 515, 523-24 (7) (769 SE2d 296) (2015). Cf. *Steele v. State*, 317 Ga. 411, 414 (2) (893 SE2d 721) (2023) ("When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." (citation and punctuation omitted)). See also OCGA § 16-1-7 (a) (1) ("When the same conduct of an accused may establish the commission of more than one crime," the accused may not "be convicted of more than one crime if . . . [o]ne crime is included in the other[.]").

Because the trial court would have the discretion to decide whether to enter a conviction and sentence on Count 2 (felony murder predicated on rape) or on Count 3 (felony murder predicated on aggravated assault with intent to rape), and because that decision

will impact the merger analysis on Count 4 (rape), I would also vacate the conviction and sentence on Count 4 for the trial court to consider on remand the proper final disposition of Count 4 in light of its sentencing decision on the felony murder counts.[26] See *Parrott v. State*, 312 Ga. 580, 583 n.4 (3) (864 SE2d 80) (2021) (explaining that in similar cases, we have declined to establish "a policy of appellate sentencing" and that we instead remand them for trial courts "to exercise [their] discretion in resentencing" (citation and punctuation omitted)); *Noel*, 297 Ga. at 700 (2) (remanding for resentencing, and reminding the trial court that "on resentencing, a legal conviction may be entered on only one felony murder verdict, [that] the underlying felony charged in that count will merge into the felony murder conviction as a matter of law" depending on which felony murder conviction was entered, that "the remaining felony murder

---

[26] The law is clear that if the trial court were to elect to enter a conviction and sentence on felony murder predicated on rape, the rape conviction would merge. However, if the trial court were to elect to sentence McCullum on felony murder based on aggravated assault with the intent to rape, the trial court would need to consider whether the rape count would merge into that felony murder conviction.

verdicts will stand vacated by operation of law, and [that] a determination whether the remaining non-murder felonies merge as a matter of fact into the felony murder conviction will need to be made").

In summary, therefore, I would reverse McCullum's malice murder conviction (Count 1), and, as a result, vacate the trial court's judgment on Counts 2, 3, and 4, for which the evidence was constitutionally sufficient to support convictions, and remand the case for resentencing on those counts.

I am authorized to state that Presiding Justice Peterson and Justice Bethel join in this dissent.